THE STATE OF OHIO, APPELLEE, *v.*
BLAGAJEVIC, APPELLANT.

(No. 48103 — Decided January 7, 1985.)

*John T. Corrigan,* prosecuting attorney, for appellee.

*Tricarichi, Carnes, Kube & Weinberger* and *Carla M. Tricarichi,* for appellant.

NAHRA, J. On August 2, 1983, Officer Fobler checked the property storage garage of the Parma police station for some bicycle wheels which he knew were being picked up by the owner the following day. He discovered they were missing and decided to check with the custodian, Joseph Couto, to see if he had moved them. Couto had not moved them, but said he would check with appellant, Slobodan Blagajevic. Appellant was a Comprehensive Employment and Training Act ("CETA") employee working as a custodian at the Parma police station. Appellant had the wheels and returned them within fifteen minutes. Later, appellant reported to work and, after being advised of his rights, made a statement and gave the police permission to search his residence.

Appellant accompanied the officers to his house and pointed out and/or told the police of other items which he had removed: bicycle baskets and wheels, a ten-speed gear changer, a jail blanket, two rolls of toilet paper, three or four bars of soap, and a sixty-watt light bulb.

Following a trial to the court, appellant was convicted of theft in office in violation of R.C. 2921.41(A)(2).

I

Appellant's first assignment of error is that:

"The trial court erred in failing to grant appellant's motion to dismiss the indictment."

Before trial, appellant moved to dismiss the indictment on the ground that he was not a "public official" within the meaning of R.C. 2921.41. For purposes of R.C. Chapter 2921, which deals with offenses against justice and public administration, "public official" is defined as follows:

" 'Public official' means any elected or appointed officer, or employee, or agent of the state or any political subdivision thereof, whether in a temporary or permanent capacity, and including without limitation legislators, judges, and law enforcement officers." R.C. 2921.01(A).

The trial court overruled appellant's motion holding that appellant was an employee of the city of Parma since he worked for the city and was paid by the city.

We begin our discussion with the mandate that criminal offenses "shall be strictly construed against the state, and liberally construed in favor of the ac-

cused." R.C. 2901.04(A). All ambiguities and reasonable doubts in interpreting criminal statutes are to be resolved in favor of the accused, *State* v. *Young* (1980), 62 Ohio St. 2d 370, 374 [16 O.O.3d 416], especially when the penalty prescribed is severe, *Ex parte Briggs* (1949), 86 Ohio App. 215, 219. Theft in office is a third degree felony, R.C. 2921.41(B), punishable by incarceration for two to ten years, R.C. 2929.11(B)(6), a fine of not more than five thousand dollars, R.C. 2929.11(C)(3), *and* being "forever disqualified from holding any public office, employment, or position of trust in this state." R.C. 2921.41(C) (now [C][1]). Furthermore, criminal statutes "must be construed in the light of the mischief they are designed to combat." *Mentor* v. *Giordano* (1967), 9 Ohio St. 2d 140 [38 O.O.2d 366], paragraph four of the syllabus.

The definition of "public official" includes employees of political subdivisions. The term "employee," however, is not defined in R.C. Chapter 2921 or in the remainder of the Criminal Code. We must, therefore, decide whether a CETA participant working as a janitor at the Parma police station is an employee of the city of Parma for purposes of the theft-in-office offense.

The Comprehensive Employment and Training Act[1] was enacted "to provide job training and employment opportunities for economically disadvantaged, unemployed, and underemployed persons * * *." Former Section 801, Title 29, U.S. Code (see 87 U.S. Stat. 839), now repealed.

In this case, appellant was hired by Mr. Sehl, the Public Housing Commissioner of Parma. Although Sehl was employed by the Parma Mayor and paid by the city, Sehl would be a federal employee because he administered the CETA program in Parma. See *United States* v. *Mosley* (C.A. 7, 1981), 659 F. 2d 812. Appellant was paid by the city of Parma with funds provided by the federal government. His wages and benefits were controlled by federal law and regulations. Appellant did not participate in the state retirement plan or receive the benefits provided other Parma employees, such as hospitalization coverage or vacation. Although either the custodian superintendent or services director of the Parma police station directed the details of appellant's daily work, Sehl retained the authority to transfer appellant to another job or dismiss appellant. Moreover, appellant could lose his job at any time if the federal government discontinued CETA funding. Appellant's employment under CETA would not accord him tenure under the state civil service laws. *State, ex rel. Pennington,* v. *Ross* (1980), 63 Ohio St. 2d 58, 60 [17 O.O.3d 36]. Based on these facts, we conclude that appellant was not an employee of the city of Parma. Although a different result may be reached under civil law, see 1978 Ohio Atty. Gen. Ops. No. 013 (CETA participants are employees of the Ohio Department of Natural Resources for purposes of R.C. 9.83), we are mindful of our statutory duty to construe the criminal laws liberally in favor of the accused. We cannot say that by including the term "employee," without definition, in a criminal statute, reasonable persons were put on notice that a participant in a federally funded program who derived no benefits from the city as did other city employees could be subject to prosecution for theft in office as a city employee.

Even if appellant were considered to be an employee, we believe that a reading of the definition of "public official" to include employees at appellant's level would be overbroad for

---

[1] The Comprehensive Employment and Training Act is now referred to as the "Job Training Partnership Act." Sections 1591 and 1592, Title 29, U.S. Code.

purposes of the theft in office offense. The General Assembly is presumed to have intended to enact a law producing reasonable, not absurd, consequences. *Canton* v. *Imperial Bowling Lanes* (1968), 16 Ohio St. 2d 47 [45 O.O.2d 327], paragraph four of the syllabus; *State* v. *Parks* (1983), 13 Ohio App. 3d 85, 86. A court has the duty, therefore, to construe statutes to avoid absurd results. *Canton* v. *Imperial Bowling Lanes, supra,* at paragraph four of the syllabus. A court must apply a rule of reason when interpreting this state's criminal statutes. *State* v. *Parks, supra,* at 86.

To read the theft-in-office statute as broadly as applied in this case, *i.e.,* to apply to a janitor who has committed a petty theft, would virtually subject all public employees who have taken a pencil or rubber band home to prosecution for a third degree felony with a possible ten-year prison term, a fine of up to five thousand dollars, and the prohibition of employment, instead of petty theft, a first degree misdemeanor, which carries a much less severe penalty. We do not believe the legislature intended this result when it enacted R.C. 2921.41. We believe the theft-in-office statute is aimed at those persons who hold positions of authority and/or public trust. See, *e.g., State* v. *Draggo* (1981), 65 Ohio St. 2d 88 [19 O.O.3d 294] (highway field examiner responsible for auditing the activities of the Ohio Department of Transportation in an eight-county district); *State* v. *Graven* (1977), 52 Ohio St. 2d 112 [6 O.O.3d 334] (supervisor with the Department of Industrial Relations). Accordingly, appellant's first assignment of error is sustained.

## II

Appellant's last assignment of error is that:

"The failure of appellant's trial counsel to file a motion to suppress, appellant's consent to a search and appellant's statement, constituted ineffective assistance of counsel; therefore the trial court erred in entering a finding of guilty when appellant was denied his Sixth Amendment right to competent counsel."

The federal test for determining whether a defendant was denied the effective assistance of counsel as required by the Sixth Amendment to the United States Constitution is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* v. *Washington* (1984), — U.S. —, 80 L. Ed. 2d 674, 692-693. The burden is on the defendant to show that counsel's performance was deficient and that such deficient performance prejudiced the defense. *Id.* at 693. A court may dispose of an ineffectiveness claim on the ground of lack of sufficient evidence of prejudice before examining whether counsel's performance was deficient. *Id.* at 699.

Although appellant has not raised a state constitutional deprivation, the standard in Ohio for determining the effectiveness of counsel is nearly identical to the recently announced standard in *Strickland.* The test in Ohio is "whether the accused, under all the circumstances * * * had a fair trial and substantial justice was done." *State* v. *Hester* (1976), 45 Ohio St. 2d 71 [74 O.O.2d 156], paragraph four of the syllabus. In applying this test, the court must determine whether an essential duty owed by defense counsel has been substantially violated and whether such violation prejudiced the defense. *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 396-397 [2 O.O.3d 495], vacated on other grounds (1978), 438 U.S. 910; *State* v. *Cooperrider* (1983), 4 Ohio St. 3d 226, 228. Moreover, "[a] criminal conviction will not be reversed on the ground of ineffective assistance of counsel solely because defense counsel failed to file a timely

motion to suppress evidence, where the record does not demonstrate that the evidence was illegally obtained." *State v. Gibson* (1980), 69 Ohio App. 2d 91 [23 O.O.3d 130], paragraph two of the syllabus. Appellant has the burden of proof since a properly licensed attorney in Ohio is presumed competent. *State v. Lytle, supra,* at 397.

The record in this case does not demonstrate that the evidence was illegally obtained. Two police detectives advised appellant of his rights prior to taking his statement and searching his residence. Detective Lisy testified that as he read appellant his rights, he stopped after each one and asked whether appellant understood the right. Appellant answered that he understood each right. Appellant then confessed to taking the bicycle wheels, the bars of soap and the toilet paper, and consented to a search of his residence for other stolen items. The signed, written consent form provides that appellant was advised of his right to refuse consent to a warrantless search and that he gave his consent freely. Appellant testified that although he never had any experience with such a form and did not know for sure what it was, he signed it because he had nothing to hide and would return everything he took. In light of these facts, appellant has failed to show that there is a reasonable probability that, but for counsel's failure to file a motion to suppress, the result would have been different. Accordingly, this assignment of error is overruled.

The judgment of the trial court is reversed and this case is remanded with instructions that the judgment and sentence thereon be vacated and appellant discharged.

*Judgment reversed and cause remanded.*

JACKSON, P.J., concurs.

PRYATEL, J., concurs in judgment only.