The STATE of Ohio, Appellee,

v.

RICE, Appellant.*

[Cite as *State v. Rice* (1995), 103 Ohio App.3d 388.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 94APA08–1188.

Decided May 4, 1995.

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 74 Ohio St.3d 1404, 655 N.E.2d 184.

390

*Michael Miller*, Prosecuting Attorney, and *Katherine Press*, for appellee.
*Samuel H. Shamansky* and *R. William Meeks*, for appellant.

TYACK, Judge.

On May 27, 1993, Vivian D. Rice was indicted by a Franklin County Grand Jury on seven charges: one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32; two counts of having an unlawful interest in a public contract, in violation of R.C. 2921.42; two counts of theft, in violation of R.C. 2913.02; and two counts of theft in office, in violation of R.C. 2921.41. A co-defendant, John Babel, was indicted on similar charges.

The charges resulted from alleged wrongdoing by Rice and Babel arising from their involvement with the Police and Firemen's Disability & Pension Fund (hereinafter "the Fund") at various times from August 1987 through April 1991, the facts of which are more fully set forth below in our discussion of the second and third assignments of error.

On May 27, 1994, the jury returned verdicts finding Rice guilty of all counts. On July 18, 1994, the trial court journalized its entry sentencing Rice accordingly.

Rice ("appellant") has timely appealed, assigning seven errors for our consideration:

"Assignment of Error No. 1:

"The trial court committed prejudicial error and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of [the] Ohio Constitution by overruling appellant's motion to dismiss the charges of having an unlawful interest in a public contract and theft in office, as appellant is not a public official as defined by the Ohio Revised Code and thus cannot be convicted of aiding and abetting a public official in violation of R.C. 2921.42 or R.C. 2921.41.

"Assignment of Error No. 2:

"The trial court committed prejudicial error and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by overruling appellant's motion to dismiss, as the state failed to offer sufficient evidence to prove each and every element to the charged offenses beyond a reasonable doubt.

"Assignment of Error No. 3:

"The trial court committed prejudicial error and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by entering verdicts of guilty on all counts, as the verdicts were against the manifest weight of the evidence.

"Assignment of Error No. 4:

"The trial court committed plain error and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by failing to properly instruct the jury on the charges of aiding and abetting a public official in violation of R.C. 2921.42 and R.C. 2921.41.

"Assignment of Error No. 5:

"Appellant's counsel's failure to object to clearly improper, deficient, and erroneous jury instructions, constituted ineffective assistance of counsel, thereby depriving appellant of her rights as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.

"Assignment of Error No. 6:

"The trial court committed prejudicial error by overruling appellant's motion to dismiss one count of theft, as the state has charged appellant with a series of violations which must be consolidated as a single offense pursuant to R.C. 2913.02, thereby depriving appellant of her rights as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.

"Assignment of Error No. 7:

"The trial court committed prejudicial error by overruling appellant's motion to dismiss Count One of the indictment, as R.C. 2923.31(A) and R.C. 2923.32 are unconstitutionally vague, thereby violative of appellant's rights as guaranteed by the due process clause of the Fourteenth Amendment and comparable provisions of the Ohio Constitution."

Appellant's second and third assignments of error are related and, therefore, they will be addressed together. By her second and third assignments of error, appellant argues that the evidence presented by the state was not sufficient to allow a reasonable jury to conclude that she was guilty of the charged offenses and that the verdicts were against the manifest weight of the evidence.

This court has previously examined the similar standards of review for criminal cases challenging both the sufficiency and weight of the evidence. In *State v. Conley* (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported, 1993

WL 524917 we explained the test to be applied in reviewing the sufficiency of the evidence as follows:

"The test to be used in reviewing the sufficiency of the evidence to support a criminal conviction is set forth in the second paragraph of the syllabus of *State v. Jenks* (1991) 61 Ohio St.3d 259 [574 N.E.2d 492]. Upon such issue, determining whether, as a matter of law, the evidence is sufficient to support a conviction, the evidence must be construed in a light most favorable to the prosecution, and the reviewing court must determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * * "

However, as we explained in *Conley*, the test for reviewing the manifest weight of the evidence is slightly different.

"When the manifest weight of the evidence is the issue, the evidence is not construed most strongly in favor of the state. Instead, the appellate court must engage in a limited weighing of the evidence to determine whether there is sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. See *State v. DeHass* (1967), 10 Ohio St.2d 230 [39 O.O.2d 366, 227 N.E.2d 212]. This test is stated in the second paragraph of the syllabus of *State v. Eskridge* (1988), 38 Ohio St.3d 56 [526 N.E.2d 304], as being 'a reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt.' See, also, *Elyria v. Tress* (1991), 73 Ohio App.3d 5 [595 N.E.2d 1031]. * * * " See, also, *State v. Shamblin* (Mar. 31, 1994), Franklin App. No. 93APA07–965, unreported, 1994 WL 109685.

■ Appellant was charged with and convicted of violating R.C. 2923.32, 2921.42, 2913.02, and 2921.41. The elements of the respective offenses are set forth below.

R.C. 2923.32, entitled "Engaging in pattern of corrupt activity," provides, in pertinent part:

"(A)(1) No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *."

"Pattern of corrupt activity" is defined in R.C. 2923.31(E), which reads, in pertinent part:

" 'Pattern of corrupt activity' means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of

the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event."

Specifically, the state alleged in Count One of the indictment that while appellant was employed by or associated with the "[s]tate of Ohio and/or [the] Fund and/or National Building Consultants and/or Compudata and/or Precept Design and/or John Babel[,]" she participated in the affairs of the enterprise through a pattern of corrupt activity, namely the violations of theft, theft in office and unlawful interest in a public contract.

R.C. 2921.42(A), entitled "having an unlawful interest in a public contract," reads, in pertinent part:

"No public official shall knowingly do any of the following:

"(1) Authorize, or employ the authority or influence of his office to secure authorization of any public contract in which he, a member of his family, or any of his business associates has an interest[.]"

Counts Two and Three of the indictment alleged that appellant violated the above provision with regard to a series of contracts between National Building Consultants and the Fund, and a series of contracts between Compudata and the Fund. The state prosecuted appellant on a complicity theory, alleging that she aided and abetted Babel, a public official, in the offenses.

R.C. 2913.02(A), "Theft," provides, in pertinent part:

"No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

"(1) Without the consent of the owner or person authorized to give consent;

"(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

"(3) By deception[.]"

Counts Four and Six of the indictment alleged that appellant deprived the Fund of money paid to her and/or Precept Design for consulting services without the Fund's consent, or beyond the scope of consent given by the state or the Fund, and/or by deception.

Appellant was also charged with and convicted of "theft in office," a violation of R.C. 2921.41(A), which provides:

"No public official * * * shall commit any theft offense * * * when either of the following applies:

"(1) The offender uses his office in aid of committing the offense or permits or assents to its use in aid of committing the offense;

"(2) The property or service involved is owned by this state, any other state, the United States, a county, a municipal corporation, a township, or any political subdivision, department, or agency of any of them, is owned by a political party, or is part of a political campaign fund."

Counts Five and Seven of the indictment charged appellant, under a complicity theory, with committing theft offenses, in her capacity as a "public official," with respect to money paid to her and/or Precept Design by the state for consulting services.

At trial, the state's theory, in essence, was that appellant was overbilling the Fund for equipment and services, some actually provided or rendered and some not. Further, the state sought to prove that John Babel authorized payment of these expenses on behalf of the Fund and received unlawful kickbacks from appellant in the form of money and other gratuities. The second and third assignments of error require a thorough review of the extensive evidence adduced at trial.

Appellant became involved with the Fund through John Babel, the assistant director of finance for the Fund. She had previously worked as an insurance consultant and interior designer. In 1987, Babel approached appellant and ultimately contracted with her to serve as a private consultant to review real estate contracts and health insurance claims submitted to the Fund. According to several witnesses employed by the Fund at relevant times, appellant and Babel were involved in a romantic relationship which the two of them apparently attempted to conceal. Specifically, appellant and Babel were seen kissing and hugging at various times.

As appellant's duties expanded, she established various business entities to perform additional services for the Fund. One of these entities was National Building Consultants ("NBC"), a construction business owned and operated by appellant for purposes of providing interior decorating and remodeling for the Fund's facilities. She also owned Compudata, a company which purportedly provided services to the Fund.

In 1991, the state auditor's office initiated a special audit of the Fund's finances. David McGuckin, a field auditor supervisor with the state auditor's office, testified that the special audit was precipitated by allegations of improprieties by employees of the Fund. The examiners promptly secured Babel's office, financial records, and other documents. One of the initial allegations to be investigated implicated NBC in a suspected "kick-back" scheme with Babel.

The state presented various witnesses who chronicled payments made on behalf of the Fund by Babel to appellant and her assorted business entities in an effort to prove that appellant overbilled the Fund for her services.

For purposes of organizing our review of the complex set of charges and related evidence, we will initially examine the evidence presented regarding the convictions of appellant for aiding and abetting Babel, a public official, in committing theft in office and having an unlawful interest in a public contract.

In 1989, Babel leased a Porsche, identifying himself on the business lease application as an officer of NBC, from which he claimed monthly income of $2,000. Jeff Kobunski, the owner of the leasing company, testified that appellant and Babel came in together to test-drive the Porsche before the lease application was executed. Kobunski testified that appellant was present when Babel executed the application and related paperwork. Although Babel was indicated as the "primary driver" on the application, appellant admittedly "always had possession of that car." She denied being present when Babel executed the paperwork and denied authorizing him to sign his name to the documents with that title classification.

The state questioned the propriety of numerous payments by Babel and the Fund to appellant and/or her business entities. McGuckin testified regarding Babel's payment of approximately $27,000 to NBC on a contract for repairs to the roof of the building housing the Fund. Testimony showed that the money was traced to April 1991, when appellant took $20,000 out of the $27,000 to Florida and paid approximately $11,000 toward a condominium she and Babel were attempting to purchase jointly. When the financing for the condominium was not approved, appellant received a refund in excess of $11,000, $5,000 of which she paid to Babel. According to appellant, the $5,000 was an undocumented, interest-free loan to Babel. The roof repairs were never performed.

The state produced witnesses and documentation to prove additional allegations that appellant overbilled the Fund for services purportedly rendered by NBC. The Fund paid NBC over $676,000 on fourteen proposals submitted by appellant. Approximately $310,000 was paid directly to subcontractors and over $365,000 was paid directly to appellant. Approximately $160,000 was paid to appellant over and above the amounts reflected in the proposals.

Testimony and supporting documentation was presented by the state to establish that while contracting with Babel, appellant, either personally or through one of her business entities, issued checks to Babel in excess of $20,000.

The state further sought to prove that appellant acted illegally through another of her business entities, Compudata. Testimony and related exhibits revealed that, between 1988 and 1991, appellant and Babel entered into contracts pursuant to which Compudata was to provide computer services to the Fund. The Fund paid Compudata over $37,000 pursuant to these contracts. Testimony indicated that Babel was listed on Compudata's post office box as an "authorized representative" of the company, one authorized to accept mail. When his position with

the Fund was terminated, he had possession of Compudata's blank deposit slips in his desk drawer.

Babel authorized payment to Compudata for computer consulting services and equipment. One Apple computer allegedly purchased from Compudata was never located. Testimony showed that Apple computers were not used by the Fund and were incompatible with the Fund's IBM system. Babel purchased a second Apple computer from MicroCenter with approximately $2,300 of the Fund's money and sold it for $980 to a friend, Bonnie Parish, using a Compudata invoice. According to Parish, Babel personally delivered the computer to her home.

Testimony and related documentation revealed that Compudata sold the Fund two thousand feet of plenum wire for $5,660, the fair market value of which is $1,000. No such wire was found at the Fund. Appellant denied selling any such wire to the Fund and denied submitting the corresponding Compudata invoice.

Appellant similarly denied knowledge of Compudata invoices, introduced as state's exhibits, representing the sale of certain IBM computers to the Fund for more than $6,300.

While NBC and Compudata were under contract with the Fund, in addition to the deposit on the condominium, appellant's companies paid Mr. Babel over $12,000. Further, the companies paid $5,000 to the Riviera Country Club for Babel to become a member. The $5,000 check payable to the country club was issued on June 20, 1988, the same day appellant received a $8,500 check from the Fund for software and other materials she never provided.

When interviewed prior to trial, appellant claimed that the $5,000 she paid to the club was a loan. At trial, appellant claimed that she paid $5,000 for Babel to join the club; Babel was to pay the monthly fees and allow appellant's son golf privileges. According to appellant, she paid Babel's club membership fee because of a debt her husband had incurred to Babel. She further claimed that a second $5,000 payment to Babel was a loan to enable him to buy a car. Neither of these loans was repaid.

With respect to the two theft charges, the state presented evidence tending to show that appellant received approximately $30,000 for "consulting" and "personal" services when, in fact, no such services were performed. When the Fund premises were secured by investigators, no work product or documents were located which might corroborate that appellant provided anything of value in exchange for the sums of money she was paid. Appellant admitted that, during the time she conducted business with the Fund as Vivian Rice, she provided consulting services only. She further admitted that, during this same time period, she received $8,500 as payment for software and support materials which were never provided.

In association with Precept Design, appellant purportedly performed interior design work for the Fund.. She obtained products through and paid over $36,000 to Precept Design for those products. A witness submitted that ten percent of the cost of the product is deemed to be a fair commission for interior design work. Appellant received over $97,000 for products and commission.

Appellant received a final check for over $20,000 from the Fund for interior design work. Regina Brown, owner of Precept Design, testified that she was unaware of this check. Appellant testified that Babel gave her the final check instead of sending it to Brown because a lien had been filed against the Fund for unpaid furniture bills, and Babel did not trust Brown. Appellant told investigators that she was paid instead of Brown because appellant paid the office supply store which had placed the lien against the Fund. The furniture had already been delivered to the Fund when appellant was paid, and she did not pay the office supply store with the money she received. At trial, appellant initially testified that the $20,000 payment could have been payment for ongoing services; however, she later testified that it was the final payment for furniture which had already been delivered. No supporting documentation requesting payment could be produced.

Brown testified that appellant told her that she used different company names when conducting business with the Fund so that the board members would not become suspicious regarding a single entity being paid for performing so many divergent services.

Finally, the state sought to prove that appellant and Babel engaged in a pattern of corrupt activity to steal money from the Fund. The record reveals the following evidence offered in support of this allegation.

Appellant, doing business as NBC (a construction company), Compudata (a vendor of computers and related equipment and services), and Rice Consulting (a firm offering health insurance advice), in association with Precept Design (an interior design company), entered into contracts with Babel, to provide, ostensibly, a wide variety of services. Babel had virtually unfettered discretion and authority to spend the Fund's money on unbid contracts and the Fund's board approved his financial requests without challenge. None of the contracts between the Fund and appellant's various companies were presented to the board for approval. Appellant never presented proposals, findings, or opinions to the board for her various purported consulting services. Although she claimed to provide health insurance consultation to the Fund, she never consulted, questioned nor conversed with a medical consultant hired by the board as an expert in health care.

Following Babel's termination from the Fund, appellant made no attempt to perform additional services for the Fund.

Given the narrow standard of review by which we are bound, our detailed review of the record supports a finding that a rational trier of fact could have found the essential elements of the various offenses, as set forth above, proven beyond a reasonable doubt. Further, the verdicts were not against the manifest weight of the evidence, as there was overwhelming competent, credible evidence to permit reasonable minds to find appellant guilty beyond a reasonable doubt of all of the charges. The second and third assignments of error are overruled.

■ The first assignment of error contends that the trial court erred in overruling appellant's motion to dismiss the charges of having an unlawful interest in a public contract and theft in office because the offenses are uniquely applicable to those who are "public officials." Since appellant is not a "public official," that status being an essential element of both offenses, she could not be properly convicted of either as a principal offender.

R.C. 2921.01(A) defines "public official" as follows:

"(A) 'Public official' means any elected or appointed officer, or employee, or agent of the state or any political subdivision, whether in a temporary or permanent capacity, and including without limitation legislators, judges, and law enforcement officers."

The state concedes, as it did at trial, that appellant is clearly not a "public official" within the statutory definition. The state argues that appellant was properly convicted on a complicity theory because she aided and abetted a public official, John Babel, in the commission of theft and securing public contracts in which Babel had an interest.

Citing *State v. Blagajevic* (1985), 21 Ohio App.3d 297, 21 OBR 443, 488 N.E.2d 495, appellant essentially argues that one must be a public official in order to be convicted of either offense. Further, appellant submits that one must be a public official in order to be convicted as a complicitor. We disagree.

In *Blagajevic*, the Cuyahoga County Court of Appeals held that a janitor working at the city police station was not a "public official" for purposes of the theft-in-office statute. We find *Blagajevic* readily distinguishable from this situation, as the janitor, accused of stealing items from the property storage garage, was prosecuted as the principal offender. In contrast, appellant was prosecuted and convicted as an aider and abettor, in complicity with one who is indisputably a public official. The Cuyahoga County Court of Appeals similarly distinguished its earlier *Blagajevic* in *State v. Haberek* (1988), 47 Ohio App.3d 35, 43–44, 546 N.E.2d 1361, 1369–70, affirming a theft-in-office conviction where the defendant, a nonpublic official, aided and abetted a public official, the principal offender, in the theft offense. Thus, we hold that a nonpublic official may properly be convicted as an aider and abettor, in complicity with a public official as principal offender, for purposes of R.C. 2921.41 and 2921.42.

R.C. 2923.03, Ohio's complicity statute, provides, in pertinent part:

"(A) No person, *acting with the kind of culpability required for the commission of an offense*, shall do any of the following:

"(1) Solicit or procure another to commit the offense;

"(2) Aid or abet another in committing the offense;

"(3) Conspire with another to commit the offense * * *;

"(4) Cause an innocent or irresponsible person to commit the offense." (Emphasis added.)

Thus, pursuant to R.C. 2923.03(A), the state was required to prove that appellant "act[ed] with the kind of culpability required for the commission of" the two offenses in aiding and abetting Babel's commission of the offenses as principal offender. R.C. 2921.42, "having an unlawful interest in a public contract," sets forth a "knowingly" standard for the kind of culpability required to violate the section. R.C. 2921.41, "theft in office," refers to theft as defined in R.C. 2913.01(K), which includes the general "theft" provision, R.C. 2913.02. R.C. 2913.02(A) sets forth the kind of culpability required to commit theft as being "purposely." Clearly the evidence presented was sufficient to establish that appellant knowingly and purposely aided and abetted Babel in stealing from the Fund, a governmental entity; the evidence was similarly sufficient to show that appellant knowingly and purposely aided and abetted Babel in procuring public contracts in which both had an interest.

The first assignment of error is overruled.

▮ The fourth assignment of error contends that the trial court committed plain error by failing to instruct the jury properly on the charges of aiding and abetting a public official in violating R.C. 2921.41 and 2921.42.

At the close of the evidence, the trial court instructed the jury on the various charged offenses. The judge included an appropriate charge on aiding and abetting, tracking the language of the complicity statute set forth above. However, the complicity instructions did not specifically inform the jury of the requisite mental elements of the principal offenses, nor did the instructions inform the jury that appellant could be convicted only as a complicitor. Since defense counsel did not object to the jury instructions, we must engage in a plain error analysis pursuant to Crim.R. 52(B). "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. Our inquiry is whether, but for the purportedly erroneous instruction, the outcome of the trial clearly would have been different. *Id.*, paragraph two of the syllabus.

Although the instructions given the jury were less than perfect, we do not find the challenged deficiencies to rise to the level of plain error. Any such deficiencies were harmless beyond a reasonable doubt.

The fourth assignment of error is overruled.

The related fifth assignment of error, anticipatory of our adverse resolution of the plain error argument, submits that defense counsel's failure to object to the jury instructions constituted ineffective assistance of counsel.

■ Pursuant to the two-part test promulgated in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, to prevail on a claim of ineffective assistance, appellant must demonstrate that her attorney made professionally unreasonable errors which prejudiced appellant. Specifically, she must first show that defense counsel's performance was deficient. Pursuant to *Strickland*, "deficient" means counsel committed errors so egregious that the attorney was not functioning as "counsel" within the meaning of the Sixth Amendment. Second, appellant must show that her attorney's deficient performance prejudiced her defense, which requires a finding that counsel's errors deprived her of a fair trial.

■ As indicated above in our resolution of the fourth assignment of error, any deficiencies in the jury instructions were harmless. Accordingly, defense counsel's failure to object did not constitute ineffective assistance under the rigid standards of *Strickland*.

The fifth assignment of error is overruled.

■ In her sixth assignment of error, appellant argues that the trial court erred in overruling her motion to dismiss one count of theft. Appellant contends that the state charged her with a series of violations of R.C. 2913.02 (theft) which should have been consolidated as a single offense pursuant to R.C. 2913.61.

Appellant points to the language of R.C. 2913.61(C), entitled "Value of stolen property," which provides, in pertinent part:

"*When a series of offenses* under section 2913.02 of the Revised Code *is committed by the offender in his same employment, capacity, or relationship to another, all such offenses shall be tried as a single offense,* and the value of the property or services involved for the purposes of determining the value * * * is the aggregate value of all property and services involved in all offenses in the series. In prosecuting a single offense under this division, it is not necessary to separately allege and prove each offense in the series. It is sufficient to allege and prove that the offender, within a given span of time, committed one or more theft offenses in his employment, capacity, or relationship to another." (Emphasis added.)

Appellant contends that the two theft counts in the indictment alleged violations which were actually part of an interrelated series of crimes allegedly committed by appellant in the "same employment, capacity, or relationship" with Babel. Appellant further relies upon *State v. Krutz* (1986), 28 Ohio St.3d 36, 28 OBR 96, 502 N.E.2d 210, wherein the Supreme Court of Ohio held that theft-in-office offenses (R.C. 2921.41) are distinct from R.C. 2913.02 theft offenses, the latter of which must be tried as a single offense under the appropriate circumstances set forth in R.C. 2913.61(C).

The state responds to appellant's argument by noting the logical corollary that each offense in a series of offenses *may* be separately prosecuted where the offender is *not* in the same employment, capacity, or relationship. The state emphasizes that appellant was never literally "employed by" the Fund and she deliberately altered her various relationships with the Fund to facilitate additional theft offenses.

The state cites this court's opinion in *State v. Payne* (Dec. 4, 1979), No. 79AP–259, unreported. In *Payne*, the defendants uttered three sight drafts for the purchase of three separate automobiles from different owners through the Columbus Fair Auto Auction. In holding R.C. 2913.61 to be inapplicable, this court concluded that each transaction created a new and distinct relationship between the defendants and the victim. Noting the Committee Comment to R.C. 2913.61(C) which proposes embezzlement as an example of a series of offenses constituting a single offense, the court noted that "[e]ach transaction was complete in and of itself, and *there was no continuing relationship involved in the sense contemplated by the statute.*" (Emphasis added.)

We find merit in appellant's argument. Although she was not literally an "employee" of the Fund, her theft offenses were committed and facilitated by her in her "same * * * relationship," that of "independent contractor," "to another," John Babel and/or the Fund. Hence, we draw a distinction between the situation in *Payne* and that presented here. Clearly there existed here a "continuing relationship" between appellant and the Fund and/or Babel, which relationship facilitated her theft offenses regardless of the name by which she called herself when committing the offenses. We believe that appellant's ongoing relationship and ensuing conduct more closely resemble an embezzlement-type of offense than distinctly separate, completed transactions of the type described in *Payne*. Therefore, we hold that the theft offenses should have been consolidated pursuant to R.C. 2913.61.

The sixth assignment of error is sustained to that extent.

Appellant additionally argues that if indeed she may only be convicted of one theft offense, the evidence could not sustain her conviction for engaging in a

pattern of corrupt activity because the requisite two or more underlying predicate offenses would be lacking. We disagree. This argument is erroneously premised upon appellant's continuing assertion that she may not be properly convicted of the charges related to her aiding and abetting a public official, which assertion we have clearly rejected above.

In her seventh and final assignment of error, appellant asserts that the trial court erred in overruling her motion to dismiss count one of the indictment because Ohio's racketeer influenced and corrupt organizations ("RICO") statute, R.C. 2923.32 (engaging in a pattern of corrupt activity), and 2923.31(A) (which defines "pattern of corrupt activity") are unconstitutionally vague. Appellant submits that the statutes, which are set forth above, are fatally defective and void for vagueness because they fail to set forth, expressly or impliedly, the *mens rea* element required to give adequate notice of the culpability proscribed.

With the exception of R.C. 2923.32(A)(3), which sets forth a "knowingly" *mens rea* element, the RICO statute is silent as to what culpable mental state a defendant must possess in order to be convicted. We preface our discussion with acknowledgment of the long-settled principle that all legislative enactments enjoy a presumption of constitutionality. Therefore, we must apply all presumptions and rules of construction so as to uphold, if at all feasible, a statute or ordinance challenged as unconstitutional. *State v. Dorso* (1983), 4 Ohio St.3d 60, 61, 4 OBR 150, 150–151, 446 N.E.2d 449, 450.

The standard for determining whether a statute is impermissibly vague or indefinite is whether the statute fails to give a person of ordinary intelligence fair notice that his or her contemplated conduct is forbidden by statute. *State v. Thrower* (1989), 62 Ohio App.3d 359, 372, 575 N.E.2d 863, 871–872, citing *United States v. Harriss* (1954), 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989, 996–997.

Our research reveals that while few courts have addressed this issue, all reviewing courts have rejected the argument that R.C. 2923.32 *et seq.* is unconstitutionally vague for failure to set forth ascertainable standards of guilt. However, the courts are at significant variance in their respective interpretations of the *mens rea* element necessary to prove a RICO violation.

In *Thrower, supra,* the Summit County Court of Appeals followed a line of cases in the United States Second Circuit Court of Appeals, holding that the culpable mental state necessary to establish a RICO violation is that required to prove commission of the predicate offenses.

The Clark County and Miami County Courts of Appeals have rejected the *Thrower* approach and determined that "recklessness" is the requisite mental element. See *State v. Burkitt* (1993), 89 Ohio App.3d 214, 624 N.E.2d 210, and

*State v. Hughes* (Mar. 13, 1992), Miami App. No. 90–CA–54, unreported, at 13, 1992 WL 52473. In so holding, those courts rely upon the language of R.C. 2901.21(B), which reads:

"When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. *When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.*" (Emphasis added.)

A concurring judge in *Hughes* took the position that no culpable mental state is required, as R.C. 2923.32 "plainly indicates a purpose to impose strict liability" within the meaning of R.C. 2901.21(B) above.

In its recent *State v. Haddix* (1994), 93 Ohio App.3d 470, 638 N.E.2d 1096, the Preble County Court of Appeals followed the lead of the *Hughes* concurrence and construed R.C. 2923.32(A)(1) and (2) as imposing strict liability. The court reasoned that this was the proper construction of legislative intent because those sections failed to prescribe a culpable mental state and because of the varying culpable mental states possible under the predicate RICO offenses identified in R.C. 2923.31. The *Haddix* court rejected the "predicate offenses" approach taken by *Thrower* and the Second Circuit because the rule would not be useful when the corrupt activity is based upon several predicate offenses with differing culpable mental states.

We agree with the *Haddix* court and hold that R.C. 2923.32(A)(1) and (2) indicate a purpose to impose strict liability. However, we do not deem the strict liability and "predicate offenses" theories as being two irreconcilable, disparate approaches. To establish a RICO violation, both approaches require proof of the commission of the predicate offenses and neither approach requires an additional scienter element to be proven beyond that required for the predicate offenses.

The seventh assignment of error is overruled.

The judgment of the trial court is affirmed in part and reversed in part. The first, second, third, fourth, fifth and seventh assignments of error are overruled. Having sustained the sixth assignment of error in part, the judgment of the trial court is reversed in regard to the theft convictions and this cause is remanded with instructions to merge the two theft offenses and to enter judgment accordingly.

*Judgment affirmed in part,*
*reversed in part;*
*and cause remanded.*

PETREE and DESHLER, JJ., concur.