OPINION
Defendant-appellant Rick Houseman appeals three convictions which were entered in the Belmont County Common Pleas Court after a jury trial. For the following reasons, appellant's convictions are affirmed.
 STATEMENT OF FACTS
Appellant worked for Marketing Analysis Sales Service (MASS) in St. Clairsville, Ohio, a company that contacted timeshare owners. If the owners were interested in selling their timeshares, they were invited to a meeting at MASS. Under such an argument, appellant met with Flora Isenberg on January 20, 1996 and with Mahlon Manley on January 21, 1996 (the victims in this case). Appellant informed them that the one-week timeshares that they previously purchased for $5,000 were worth $17,600. He further stated that Oscar C. Bradley Associates (OCB) in England would sell the timeshares for them. The victims were assured that if OCB failed to sell the timeshares in twelve months, then British Guarantee Company would buy the timeshares for 90% of the $17,600 figure. To receive this twelve month guarantee, the victims had to pay ten percent of the $17,600 value, which is approximately $2,600. Additionally, the victims were told by appellant that they would receive a "free" vacation as part of the package.
The victims agreed to the deal. Appellant then sent the paperwork to a company who sold vacation packages or travel club memberships and used the aforementioned ten percent fee to purchase the package. The victims were unaware that the money they paid appellant was being used to purchase their "free" vacation package. Appellant also informed the victims that they initially would receive low offers to purchase their timeshares and that said offers should be refused. On March 22, 1996, the victims received offers for $4,650 which they refused. On September 30, 1996, the victims received offers of approximately $17,000. These offers instructed the victims to accept by sending $310, the price of an appraisal, to England. Both victims agreed to sell, but only Ms. Isenberg sent the requested sum. However, neither victim received any money for their timeshares.
On February 6, 1997, appellant was indicted on three counts. Count One charged appellant with engaging in a pattern of corrupt activity, a first degree felony. Counts Two and Three alleged fourth degree felony theft, a count for each of the two victims. The jury trial began on November 18, 1997. On November 26, the jury returned guilty verdicts on all three counts. On December 17, appellant was sentenced to six to twenty-five years on Count One. He was also sentenced to twelve months on Count Two and twelve months on Count Three. All three sentences were to run consecutively. A proposed fine and restitution were suspended due to indigency. Appellant filed the within timely appeal.
 ASSIGNMENT OF ERROR NUMBER ONE
Appellant sets forth six assignments of error, the first of which alleges:
 "THE STATE MADE IMPROPER REMARKS DURING ITS OPENING AND CLOSING ARGUMENTS THAT PREJUDICED THE APPELLANT'S RIGHT TO A FAIR TRIAL."
Under this assignment of error, appellant alleges that various remarks contained in the state's opening statement and closing argument constitute prosecutorial misconduct. A prosecutor's remarks require reversal only if they were improper and they prejudiced substantial rights of the defendant. State v.Clemons (1998), 82 Ohio St.3d 438, 451.
In support of the aforementioned assignment of error, appellant points to three portions of the state's opening statement. First, appellant complains that the indictment alleges that he sold the guarantees in January 1996 but the state's agent did not tell him that the business was fraudulent until a search warrant for MASS was executed in April 1996, which was only three months into the twelve month guarantee period. The argument appellant raises is unclear. Appellant was not indicted until the twelve month guarantee period had expired. Furthermore, the knowledge of the impropriety of the business was not alleged to have commenced when the state's agent spoke to appellant. Since we cannot fathom his point, we can only conclude that this argument is meritless.
The other two problems that appellant has with opening statements occur in the following excerpt, wherein the prosecutor stated:
 "Mr. Taft [the designer of the timeshare resale guarantee program] is in jail. He is currently a federal prisoner from Denver, Colorado who has pled guilty to money laundering and wiring fraud charges.
 Ron Tews and Terra Bailey have also pled guilty. They work in the same office in St. Clairsville as the defendant. They will testify how they knowingly lied to their customers in order to take their money." (Tr. 19-20).
Mr. Tews pled guilty to five counts of fourth degree felony theft. Ms. Bailey pled guilty to eight counts of fourth degree felony theft. Appellant contends that the above statement implied that Mr. Tews and Ms. Bailey pled guilty to money laundering and wiring fraud as did Mr. Taft. However, the state specifically said that Mr. Tews and Ms. Bailey pled guilty and would testify to lying to customers to take their money, a description of the same offense with which appellant is charged. We fail to see prosecutorial misconduct here. If appellant thought that the state's phrasing was misleading, he should have objected at a point when the confusion could have been clarified. By failing to so object, appellant waived any alleged confusion.
Appellant also criticizes the state for saying that Mr. Tews and Ms. Bailey would testify and then failing to call these witnesses. The state responds that these witnesses were subpoenaed, but a tactical decision was made to forgo their testimony in order to avoid a needless presentation of cumulative evidence. As the state points out, the court instructed the jury that statements made by attorneys in opening statements are not evidence. (Tr. 6). Additionally, appellant could have mentioned in closing arguments that the state failed to put on the evidence that it promised. See State v. D'Ambrosio (1993), 67 Ohio St.3d 185,193. Moreover, it must be noted that the prosecutor said that the witnesses would testify that they knowingly lied, not that appellant knowingly lied. As such, prejudice is not apparent. See State v. Nabozy (1978), 54 Ohio St.2d 195, 211 (revealing that a defendant is not inevitably prejudiced by the fact that the state mentions evidence in opening statements that is not produced at trial).
Appellant then complains about four items contained in the rebuttal portion of the state's closing argument. (By a different prosecutor than the one who gave the opening statement and the closing argument). Before going into these items, it must be pointed out that appellant failed to object to any part of the state's rebuttal. Hence, appellant waived all but plain error under Crim.R. 52 (B). Plain error does not exist unless, but for the error, the outcome at trial would have been different. Statev. Jenks (1991), 61 Ohio St.3d 259, 282. Notice of plain error shall only be taken in exceptional circumstances and only to prevent a manifest miscarriage of justice. Id. Furthermore, a prosecutor has considerable latitude in closing arguments to draw reasonable inferences from the evidence. State v. Goodwin (1999)84 Ohio St.3d 331, 340. This latitude is wider on rebuttal where the prosecutor has room to respond to closing comments of defense counsel. The Supreme Court has allowed subjectivity on the part of the prosecutor and has characterized borderline comments as being "marginally permissible" after consideration of the context and the evidence. Clemons, 182 Ohio St.3d at 452.
The first part of the rebuttal which appellant labels prosecutorial misconduct is where the prosecutor said, "this defendant is not a victim. This defendant, Rick Houseman, is a con; he's a fraud; he's a scam artist. He's not naive." (Tr. 1382). Appellant argues that the state improperly expressed personal beliefs by calling him a con, a fraud and a scam artist. However, the offenses with which appellant was charged all involved fraud and deception. Thus, characterizing appellant as a fraud and other synonyms of the word was marginally permissible and not so prejudicial that appellant's trial was unfair. Id. at 452 (stating that the reference to the defendant as a liar was marginally permissible since it was based on the evidence presented). See, also, State v. Green (1990), 67 Ohio App.3d 72,80 (stating that a prosecutor's unobjected to closing argument that described the defendant as a fraud, a phony and a liar did not deny that defendant a fair trial). Thus, we overrule this argument.
Appellant then argues prosecutorial misconduct regarding the following comments:
 "And he's been hitting and running and hiding for some 15 years, from 1981 or `82, when he started in the campground business and in the timeshare resale business.
 He didn't get complaints, ladies and gentlemen, because he wasn't around long enough. You heard the victims say they tried to call; the numbers were disconnected. And he is the only one that testified that he was in — and perhaps one of the agents that he told them that he was in Maryland for 16 months. But what do you want to bet, ladies and gentlemen, that the contracts in Maryland were for 18 months?" (Tr. 1384). [The portions which appellant characterizes as misconduct are underlined].
The prosecutor's statement about Maryland was basically invited by a sentence in appellant's closing argument where counsel attempted to argue that it was not logical to believe that appellant engaged in "looting and scooting." He stated that the guarantees he sold were for twelve months and if he were a scam artist, then he would not have conducted the same business in Maryland for sixteen months. The prosecutor's rebuttal explaining that the contract was probably for eighteen months was marginally permissible, particularly in light of an exhibit which established that another fraudulent company used the same contract as appellant but used an eighteen month guarantee and in light of the testimony of Mr. Taft which explained that both twelve and eighteen month contracts were used.
Appellant then argues that the state misled the jury into believing that the company had the number disconnected. He contends that it was the Attorney General's office that ordered the number disconnected. However, there was no evidence that the Attorney General's office had the number disconnected. The victims testified that they tried to call the company, but the number was disconnected. The prosecutor merely restated the evidence as presented. There is no prosecutorial misconduct here.
As for the prosecutor's insinuations that appellant has been running scams for fifteen years, these comments were improper. See State v. Lott (1990), 51 Ohio St.3d 160, 165-66 (stating that prosecutors should avoid insinuations that allude to matters not supported by admissible evidence). It is true that appellant began selling campground shares and then timeshares approximately fifteen years ago. It. is also true that appellant relocated many times over that fifteen year period. However, there was no evidence of impropriety occurring that long ago.
Nonetheless, read in context of the entire case and remembering that the comment was made in rebuttal, material prejudice is not apparent. The court instructed, and defense counsel advised the jury, that statements made by attorneys are not evidence. (Tr. 5, 6, 1365). The insinuation appears to be a response to defense counsel's closing argument that appellant is naive and uneducated and thus was unaware of impropriety. The prosecutor's statement, although speculative and/or exaggerated, was an attempt to rebut appellant's alleged naivete on matters concerning the sale and resale of timeshares. We cannot say that, but for this statement, appellant would have been acquitted. The prosecutor's insinuation, although improper, was not outcome-determinative. This one statement made on rebuttal did not rise to the level of a plain error that caused a manifest miscarriage of justice. In accordance, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error contends:
 "THE STATE ERRED INDICTING APPELLANT WITH MORE THAN ONE VIOLATION UNDER OHIO REVISED CODE § 2913.02, WHICH SHOULD HAVE BEEN CONSOLIDATED AS A SINGLE OFFENSE, PURSUANT TO OHIO REVISED CODE § 2913.61."
Appellant argues that the two theft offenses under R.C.2913.02, Counts Two and Three of the indictment, should not have been tried as separate offenses. Generally, this issue is waived if an appellant failed to raise it before, or even during, trial. See State v. Stone (June 23, 1993), Washington App. No. 92 CA 21, unreported. Furthermore, this appellant misinterprets R.C. 2913.02
(C), which provides in pertinent part:
 "When a series of offenses under section 2913.02 of the Revised Code is committed by the offender in his same employment, capacity, or relationship to another, all such offenses shall be tried as a single offense, and the value of the property or services involved for the purpose of determining the value * * * is the aggregate value of all property and services involved in all offenses in the series."
This section "specifies rules for prosecuting as a single offense a series of theft offenses amounting to embezzlement." Committee Comment to R.C. 2913.61 (C). For instance, an employee who stole money from her employer on three occasions while working in her capacity as a grocery clerk can only be tried on a single offense. State v. Redmond (Mar. 7, 1996), Crawford App. No. 3-95-24, unreported. See, also, State v. Doli (1970), 24 Ohio St.2d 130,134 (analyzing the history and purpose of the former embezzlement statute). Where the defendant steals from the same victim multiple times in an on-going relationship, R.C. 2913.61 (C) instructs the court to try the defendant for a single offense, the level of which will depend on the aggregate amount of each theft.State v. Rice (1995), 103 Ohio App.3d 388.
However, as the state points out, R.C. 2913.61 (C) is inapplicable where each theft is committed separately against different victims. See State v. Greer (Dec. 1, 1999), Union App. No. 14-99-26, unreported, 2; State v. Bonanno (June 24, 1999), Allen App. No. 1-98-59, 1-98-60, unreported, 3 (both holding that the statute's language "to another" connotes that the defendant stole from the same person or entity in the same relationship). In the case at bar, the theft offense in Count Two concerned the victim Mrs. Isenberg and occurred on January 20, 1996. The theft offense in Count Three concerned the victim Mr. Manley and occurred on January 21, 1996. Each theft involved a distinct relationship. The mere fact that the same technique was used to deceive both victims does not turn the two individual thefts into a single offense. As such, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER THREE
Appellant's third assignment of error contends:
 "THERE EXISTED INSUFFICIENT EVIDENCE TO FIND THE APPELLANT GUILTY BEYOND A REASONABLE DOUBT ON ALL THREE (3) COUNTS AND THE JURY VERDICT ON ALL THREE COUNTS WAS ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
First, appellant contests his conviction of engaging in a pattern of corrupt activity in violation of R.C. 2923.32. Pattern of corrupt activity is defined in R.C. 2923.31 (E) as follows:
 "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event."
Appellant states that because the two theft offenses should have been considered a single offense, as argued in his second assignment of error, there did not exist two or more incidents. Since we disposed of this argument supra, it need not be rediscussed. Appellant then argues that regardless of our holding under his second assignment of error, the theft offenses were "so closely related to each other and connected in time and place that they constitute a single event." We disagree. As aforementioned, there were two separate and distinct victims. Appellant met with each victim separately. The fact that each victim met with appellant at the same location or that the meetings were held one day apart does not change the fact that theft by deception occurred to each victim separately. We fail to see how the two theft offenses constituted a single event.
Next, appellant argues that the evidence was insufficient to prove that he committed the theft in violation of R.C. 2913.02. A conviction shall not be reversed on grounds of insufficient evidence unless the reviewing court holds that no rational factfinder could have found the elements of the offense proven beyond a reasonable doubt. State v. Goff (1998), 82 Ohio St.3d 123, 138. In making this determination, the evidence must be viewed in a light most favorable to the state. Id. If reasonable minds could reach different conclusions, then the evidence is sufficient. SeeState v. Bridgeman (1978), 55 Ohio St.2d 261.
Appellant's sufficiency argument focuses on the element of intent. He believes that the evidence was insufficient to establish that he had knowledge that the timeshare resale guarantee program was a scam. However, after viewing the evidence in the light most favorable to the state, a rational trier of fact could reasonably find that appellant possessed the relevant mental state of knowingly.
Appellant assigned a sale price of $17,600 to the victims' timeshares. This is a price that even the creator of the scam opined was ridiculously high. (Tr. 599). Appellant told the victims that if the timeshares were not sold within twelve months they would receive 90% of the "appraised value." The trick was that the "appraised value," as appellant used it, was not the same as the value that he initially assigned to the property. This fact remained undisclosed to the victims. In order to get the guarantee, they had to pay 10% of the sale price, approximately $2,600. Appellant informed the victims that they would receive a low offer and that they should reject it. They rejected the offer on appellant's advice. The victims' timeshares were never sold. Thus, they never received 90% of the $17,600 price that they were led to believe was guaranteed. The victims testified that they received nothing for the $2,600 that they paid.
It was established that appellant was an experienced salesman, particularly in the field of timeshares. Testimony established that timeshares did not usually appreciate in value. Mr. Taft testified that he believed appellant knew that the operation was a scam. (Tr. 618, 636). Viewing the evidence in the light most favorable to the state, appellant deceived the victims with misinformation, leading them to believe that they were guaranteed 90% of the sale price that he formulated when in fact the guarantee was only for 90% of an unknown appraised value. He told them they were purchasing a guarantee when in fact they were purchasing a travel club membership. Mr. Taft testified that appellant knew that this is how the operation worked. (Tr. 591). Hence, the state presented sufficient evidence to support the theft convictions.
Appellant also urges that his conviction is against the manifest weight of the evidence because no credible evidence was presented that he knew the program was fraudulent, once again focusing on the element of knowledge. A reviewing court will not reverse on these grounds unless the jury clearly lost its way and created a manifest miscarriage of justice when it weighed the evidence and evaluated the credibility of witnesses. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. Determinations of witness credibility are predominately the province of the jury since it sits in a superior position to observe the demeanor of each witness as testimony is presented. Myers v. Garson (1993),66 Ohio St.3d 610, 615; State v. DeHass (1967), 10 Ohio St.2d 230,231. We cannot say that the jury clearly lost its way when it inferred from the evidence that appellant had knowledge of the true characteristics of the operation. The jury did not create a manifest miscarriage of justice by refusing to believe appellant's assertions that he thought that the operation was legitimate. The jury was permitted to infer that appellant knowingly obtained the victims' money by deception in violation of R.C. 2913.02 (A) (3). See State v. Garner (1995), 74 Ohio St.3d 49, 60 (stating that the jury determines intent by drawing inferences from the surrounding facts and circumstances). Accordingly, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER FOUR
Appellant's fourth assignment of error contends:
 "CONDUCT OF THE JURORS DEPRIVED APPELLANT OF HIS CONSTITUTIONAL RIGHT TO AN IMPARTIAL JURY GUARANTEED BY BOTH THE UNITED STATES AND OHIO CONSTITUTION."
Appellant claims that he is entitled to a new trial because a juror fell asleep during trial. Page 262 of the trial transcript reflects that defense counsel approached the bench and informed the court that a juror was sleeping. The court called a short break and asked the jurors if they were feeling okay. Appellant did not ask that the juror be voir dired, that testimony be repeated, that the sleeping juror be replaced by an alternate, or that a mistrial be granted. State v. Heard (June 11, 1987), Cuyahoga App. No. 52303, unreported, 4 (stating that even a defendant who brings the issue of a sleeping juror to the court's attention during trial waived any error if he fails to request that the juror be replaced by the alternate). These were the remedies that were available. By failing to request such remedies, appellant waived his right to seek review of the issue on appeal. One cannot sit on his rights, hope for a favorable jury verdict and after receiving an unfavorable jury verdict, finally assert an issue which was easily remedied at the time of its occurrence.State v. Brletich (June 28, 2000), Columbiana App. No. 98 CO 84, unreported, 5-6.
Appellant claims that other jurors also slept through portions of the trial. However, he does not point to any portion of the transcript which so reflects this allegation. Failure to raise a problem such as this waives any right to seek review on appeal. Id. See, also, State v. Slagle (1992), 65 Ohio St.3d 597,604; State v. Sapp (Aug. 15, 1995), Franklin App. No. 94APA10-1524, unreported, 7-8. In accordance, this assignment or error is overruled.
 ASSIGNMENT OF ERROR NUMBER FIVE
Appellant's fifth assignment of error provides:
 "THE TRIAL COURT VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT, WHEN IT REFUSED TO GRANT APPELLANT A CONTINUANCE TO PREPARE FOR TRIAL."
Appellant was indicted in February 1997. In July, appellant sought and was granted a continuance of his trial date. On September 2, 1997, his attorney filed a motion to withdraw due to a conflict of interest. New counsel was appointed that week. On October 6, new counsel filed a motion for a continuance which was granted on October 8. On October 16, the court set a trial date of November 18. The trial began as scheduled.
Appellant now claims that two months provided insufficient time for his new counsel to prepare for trial. Appellant states that the court abused its discretion by failing to grant the requested continuance. However, appellant is mistaken. On October 8, the court specifically granted the continuance. The motion for a continuance did not specify the amount of time needed. The court used sound discretion in setting a trial date of November 18. Had counsel determined that the time granted was insufficient, he had ample time to file a second motion for a continuance and include a request for a specific amount of preparation time. In the absence of a motion to continue, the trial court may appropriately determine that both parties are fully prepared and ready to proceed with the case. State v. Edwards (1976), 49 Ohio St.2d 31,43. "A trial court is not obligated to sua sponte
ascertain whether a party needs more time to prepare for trial."Miller v. Ritchie (1989), 45 Ohio St.3d 222, 227, fn. 3. Therefore, this assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER SIX
Appellant's sixth assignment of error contends:
 "ALICE MONTAG AND DONALD FOX SHOULD NOT HAVE BEEN PERMITTED TO TESTIFY, IN THAT, THIS VIOLATED OHIO EVIDENCE RULES 403 404."
Alice Montag testified that she met with appellant on January 18, 1996. Her story was similar to that of the two victims in this case only she did not lose any money because appellant transcribed her credit card number wrong. Also, she became suspicious and basically started the investigation into appellant's operation. Donald Fox testified that he met with appellant on January 16, 1996. He signed for the same deal as the victims but did not lose money because he canceled the contract after receiving a call from Mrs. Montag who had noticed his name on a file in appellant's office.
Appellant claims that the testimony of Mrs. Montag and Mr. Fox is inadmissible because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading of the jury all contrary to Evid.R. 403 (A). He also argues that the testimony is inadmissible under Evid.R. 404 (B), which prohibits evidence of other crimes, wrongs or acts to prove character of a person to show that he acted in conformity therewith.
The state points out that appellant failed to object to the testimony at trial and thus waived all but plain error under Crim.R. 52 (B). Additionally, the state counters that the testimony was admissible under the exception to Evid.R. 404 (B) which allows evidence of other crimes, wrongs or acts to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Also relevant to this assignment is R.C. 2949.59, which provides:
 "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
As the state posits, the fact that appellant made the same presentation on the guarantee program to two other people in the same week tend to show a scheme, plan or system and intent. For instance, the record shows that Mrs. Montag was able to determine that the operation was not legitimate through her own independent investigation. Hence, her testimony is relevant to and probative of appellant's knowledge of the operation's legitimacy, a fact which he contests as outlined supra.
Regardless, we cannot say that appellant would not have been convicted but for the testimony of these two witnesses. Appellant's specific argument is that the state misled the jury by emphasizing that the timeshares of Mrs. Montag and Mr. Fox were never sold. Appellant notes that Mrs. Montag never paid the ten percent fee due to a credit card transcription error and that she canceled her contract. Mr. Fox also canceled his contract. Since the jury was informed that neither witness lost any money, we fail to see material prejudice to appellant's defense that would require reversal under a plain error analysis. As such, this assignment of error is overruled.
For the foregoing reasons, appellant's convictions are hereby affirmed.
Cox, P.J., concurs, Donofrio, J., concurs.
 _________________________ JOSEPH J. VUKOVICH, JUDGE