DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Angel Lozano, Defendant, appeals from his conviction in the Lorain County Court of Common Pleas for theft in office. This Court reverses.
Defendant's conviction resulted from the illegal sale of approximately 1,800 pounds of water meters owned by the City of Lorain to National Wastepaper Company ("Scrappies"). At the time of this sale, Defendant was employed by the City as a line mechanic. Among other duties, Defendant was authorized to remove and replace water meters throughout resident homes in the City of Lorain. The removed meters were to be tagged and placed in a warehouse until the City sold them to another company. During December 2-9, 1996, Defendant and a fellow employee removed approximately 1,800 pounds of water meters from the City's warehouse, without authorization, and sold them for $546.00 to Scrappies.
On March 5, 1997, the Lorain County Grand Jury indicted Defendant on one count of theft in office, a violation of R.C.2921.41(A). This matter proceeded to trial on April 28, 1998, and on May 4, 1998, Defendant was found guilty of theft in office, a fourth-degree felony. He was sentenced to three years of community control and sixty days electronic monitoring. Additionally, he was fined $3000 and costs, with $500 of the fine suspended upon a $2500 contribution to a charity designated by the court. Defendant has appealed to this Court, raising two assignments of error for review.
 ASSIGNMENT OF ERROR I
The trial court erred, and to the prejudice of [Defendant], in finding [Defendant] to be a "public official" as defined in R.C. 2921.01(A) and subject to prosecution under the theft in office statute, R.C. 2921.41.
Defendant first argues that he is not a "public official" for purposes of R.C. 2921.41(A) which provides, in relevant part:
 (A) No public official or party official shall commit any theft offense * * * when either of the following applies:
 (1) The offender uses the offender's office in aid of committing the offense or permits or assents to its use in aid of committing the offense;
 (2) The property or service involved is owned by this state, any other state, the United States, a county, a municipal corporation, a township, or any political subdivision, department, or agency of any of them[.]
* * *
 (B) Whoever violates this section is guilty of theft in office. Except as otherwise provided in this division, theft in office is a felony of the fifth degree. If the value of property or services stolen is five hundred dollars or more and is less than five thousand dollars, theft in office is a felony of the fourth degree.
"Public official" is defined in R.C. 2921.01(A) as "any elected or appointed officer, or employee, or agent of the state or any political subdivision, whether in a temporary or permanent capacity, [including], but * * * not limited to, legislators, judges, and law enforcement officers."
This statute has previously been held to be clear and unambiguous. State v. Tomlin (Mar. 7, 1990), Montgomery App. Nos. 11720 and 11881, unreported, 1990 Ohio App. LEXIS 861, at *2, citing State v. Steggeman (Mar. 21, 1984), Montgomery App. No. 8319, unreported, 1984 Ohio App. LEXIS 9491, at *3. Therefore, the legislature's description of a public official in R.C.2921.01(A) leaves no room for a construction that excludes Defendant from its terms. Steggeman, supra, at *3. Specifically, it is clear that Defendant was employed by the City of Lorain and thus eligible for city benefit programs. He worked as a line mechanic in the distribution department and his actions were directed by a supervisor who was also employed by the city. This alone renders him a public official under R.C. 2921.01(A).
Defendant relies on State v. Blagajevic (1985), 21 Ohio App.3d 297, and State v. Kreischer (Dec. 15, 1989), Geauga County App. No. 1459, unreported, 1989 Ohio App. LEXIS 4710, for the proposition that he is not a public official. In Blagajevic, the defendant was a custodian who worked at the Parma police station. He was paid with federal funding from the Comprehensive Employment and Training Act (CETA). Furthermore, the defendant's wages and benefits were controlled by federal regulations. Blagajevic,supra, at 297. In Kreischer, the defendant was a maintenance employee assigned to the Geauga County maintenance department. He too was paid with federal funding through the Job Training Partnership Act (JTPA).[1] Additionally, in Blagajevic andKreischer, neither defendant held a position of public trust as did Lozano. Id.
Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
The trial court erred, and to the prejudice of [Defendant], by a finding that the value of the property taken in this offense was greater than $500.00, and by finding [Defendant] guilty of a felony in the third degree.
In his second assignment of error, Defendant asserts that there was insufficient evidence to support the elevation of his conviction to a felony of the fourth degree. Specifically, he has argued that the prosecution failed to prove the value of the stolen property was in excess of $500.00. R.C. 2921.41(B) provides that theft in office is a fifth degree felony, unless the value of the stolen property is more than $500 and less than $5,000, in which case it is a fourth degree felony.
This argument is one of sufficiency. Sufficiency is a test of legal adequacy that measures whether the evidence underlying a conviction is sufficient as a matter of law to sustain the verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. This test requires an examination of the evidence admitted at trial to determine whether, if believed, it "would convince the average mind of the defendant's guilt beyond a reasonable doubt." Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id., citing Jackson v. Virginia
(1979), 443 U.S. 307, 319, 61 L.Ed.2d 560, 573.
At trial, the State produced the receipt from Scrappies for the brass sold by Defendant and his co-worker. This receipt specifically itemizes the sale of 1,820 pounds of brass for the price of $546.00. Defendant refers to the testimony of Richard Schrenkel, the superintendent of distribution for the City of Lorain, who testified that 300-400 pounds of brass meter material at most could be identified as Lorain City property. The City refers to the receipt to establish that 1,820 pounds of brass were stolen from the City by Lozano. However, the question is not how much was sold, but how much was stolen and the value of that stolen property. R.C. 2913.61(D) provides criteria for determining the value of property involved in a theft offense. R.C. 2913.61(D) (3) defines fair market value as:
 the money consideration that a buyer would give and a seller would accept for property or services, assuming that the buyer is willing to buy and the seller is willing to sell, that both are fully informed as to all facts material to the transaction, and that neither is under any compulsion to act.
There was ample testimony provided by Richard Schrenkel, the superintendent of distribution for the City of Lorain, with respect to the procedure involved when the City sells the brass to another company. Schrenkel testified that a company comes in, weighs the brass, gives a price, and hauls the brass away. Christopher Bunce, another City employee, also testified to that effect:
 Q: Did you know the policies and procedures regarding the scrapping of these water meters?
 A: I think that at that time basically there was a conflict they had at City Hall about the scrapping procedure.
 Before that, when we got X-number of meters stored up, a company would come from Cleveland with a dumpster and they would put it in a dumpster and weigh it.
Don Kozich, the prosecution's third witness and also a City employee, testified similarly. The prosecution's fifth and sixth witnesses were the Scrappies employees involved in the illegal purchase of the brass. Neither individual testified to the fair market value of the brass. Rather, they both testified that Scrappies pays a higher price for brass the owner personally hauls to the scrapyard than when Scrappies collects the brass. Richard Schrenkel, Christopher Bunce, and Donald Kozich all testified that it was not the City's practice to haul brass to the buyer. Instead, they stated that each time the City scrapped the brass meters, a company came out to weigh it, price it, and haul it away. Based on this practice, the brass sitting in the City's warehouse is not worth as much as brass that has been cleaned and hauled to the scrapyard by a seller.
The prosecution also failed to provide evidence of what the City customarily receives for brass. Richard Schrenkel testified that Vermilion Metals was awarded the bid to purchase this brass from the City of Lorain, but failed to state the value of this bid. This type of evidence, which would have been a reasonable indication of fair market value, is absent from the record.
Fair market value is determined by estimating the value of stolen goods in an arms length transaction, in which both parties "are fully informed as to all facts material to the transaction, and * * * neither is under any compulsion to act." R.C.2913.61(D) (3). While the prosecution did provide evidence of what Defendant was paid for the brass, this is not evidence of fair market value. This is merely evidence of what a thief received for his stolen goods and, as such, was not the product of a true arms length transaction. See, e.g., State v. Prater (Sept. 21, 1998), Tuscarawas App. No. 97AP100069, unreported, 1998 Ohio App. LEXIS 4722 at *3-4.
Assuming, arguendo, that evidence of what Defendant received was indicative of fair market value, this testimony would be insufficient to establish a fair market value in excess of $500. Specifically, testimony established that Scrappies customarily pays $.30 per pound for scrap that is delivered by the seller. In contrast, Scrappies pays $.25 per pound for scrap that is collected from the seller by the company. As noted supra, evidence indicated that it is not the City's practice to haul scrap to the buyer's facility. Assuming, then, that the transaction with Defendant represented an estimate of fair market value, his willingness to haul the scrap to the company in effect added $.05 per pound to its value beyond what may have been paid to the City. Using these figures, 1,820 pounds of scrap could be purchased from a seller, who did not personally haul the scrap away, for $455.00.
Because the City failed to establish fair market value in excess of $500 of goods stolen, Appellant's second assignment of error is sustained. His first assignment of error is overruled. The judgment of the trial court is reversed, and this case is remanded to the trial court for sentencing proceedings not inconsistent with this opinion.
Judgment reversed and cause remanded.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee.
Exceptions.
 LYNN C. SLABY FOR THE COURT BAIRD, P.J.
BATCHELDER, J.
CONCUR
[1] CETA is now referred to as JTPA. Sections 1591 and 1592, Title 29, U.S. Code.