[Cite as *State v. Larry*, 2016-Ohio-829.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Sheila G. Farmer, P. J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 15 CA 011 |
| ROY D. LARRY | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:          Criminal Appeal from the Court of Common
                                 Pleas, Case No.  15 CR 016


JUDGMENT:                        Affirmed


DATE OF JUDGMENT ENTRY:          March 2, 2016


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

STEVE KNOWLING                            DAVID M. HUNTER
PROSECUTING ATTORNEY                      244 West Main Street
F. CHRISTOPHER OEHL                       Loudonville, Ohio  44842
ASSISTANT PROSECUTOR
164 East Jackson Street
Mllersburg, Ohio  44654

*Wise, J.*

{¶1}   Appellant Roy D. Larry appeals from his convictions in the Court of Common Pleas, Holmes County, on one count of aggravated robbery, two counts of aggravated burglary, and one count of grand theft. The relevant facts leading to this appeal are as follows.

{¶2}   This case involves a series of events commencing on January 4, 2015 near the Iron Pony Saloon and Route 3 Drive-Thru in Holmes County, Ohio. Richard "Chris" Tyler, the owner, has an apartment above and behind the business. A stairwell leads to a door which is the private entrance to the rear of the Iron Pony kitchen.  The stairwell also leads to the entrance of the apartment. Tyler at the time had a large amount of cash and change for business purposes in his office in the apartment.

{¶3}   Lidia Briley was an acquaintance of Tyler's. On January 4, 2015, Tyler picked up Briley and brought her back to his apartment, where they subsequently had sex. The next morning, Tyler came back into his apartment after checking on some business matters and observed Briley with a cell phone in her hand. Tyler noticed Briley was acting strange. He then discovered Briley had emptied his wallet of several thousand dollars in cash. When he approached her, Briley started running for the door.

{¶4}   Tyler tried to block her exit from the apartment. Briley and Tyler struggled, but Briley grabbed a handgun and pointed it at him. Briley threatened to shoot Tyler in the face. Somehow the door to the apartment was opened, and the struggle again ensued. Tyler was able to wrest the gun from Briley, but as they struggled, he was jumped

by two men at the top of the steps, appellant and Keith Wilson.[1] The ensuing altercation caused the group of three men to stumble down to the bottom of the stairwell.

{¶5}    Briley, in the meantime, hurried back into the apartment. Wilson also ran up the stairs and into the apartment. Appellant temporarily left the scene. Tyler, who had maintained control of the gun, called the police, but kept the weapon pointed up the stairs at the apartment. Tyler remained on the phone with the police department for a period of time. Eventually, he returned upstairs to the apartment. By that time, Briley and Wilson had escaped through a window. According to Briley, appellant then "show[ed] up in the getaway van." Tr. at 116. Briley and Wilson jumped in the van, and the three sped off "[a]s fast as the minivan would go." Tr. at 117. In the meantime, Tyler observed his office had been left in disarray. He also subsequently found several thousand dollars of his cash outside the residence on the ground.

{¶6}    A witness observed individuals leaving in a white van, and wrote down the license plate number of the vehicle. Briley, appellant, Wilson and a fourth person, Kenny Urwin, were later apprehended when troopers from the Ohio State Highway Patrol and sheriff deputies from Ashland County stopped the van on U.S. Route 30. At that time, more than $9,000.00 in currency was found in the vehicle.

{¶7}    On February 9, 2015, the Holmes County Grand Jury indicted appellant as follows:

{¶8}    COUNT ONE: Aggravated Robbery (R.C. 2911.01(A)(1) and 2911.01(C)), a felony of the first degree, with a firearm specification (R.C. 2941.145(A)).

---

[1]    Wilson was later convicted of multiple charges related to this incident. *See State v. Wilson*, 5th Dist. Holmes No. 15CA015, 2015-Ohio-5588.

{¶9}   COUNT TWO: Aggravated Burglary (R.C. 2911.11(A)(1) and 2911.11(B)), a felony of the first degree, with a firearm specification (R.C. 2941.145(A)).

{¶10} COUNT THREE: Aggravated Burglary (R.C. 2911.11(A)(2) and 2911.11(B)), a felony of the first degree, with a firearm specification (2941.145(A)).

{¶11} COUNT FIVE: Grand Theft (R.C. 2913.02(A)(1) and 2913.02(B)(2)), a felony of the fourth degree.

{¶12} Appellant entered pleas of not guilty to all of the above counts and specifications, and the matter proceeded to a bench trial on April 20-21, 2015.

{¶13} After hearing the evidence and arguments, the trial court ultimately found appellant guilty of all of the aforesaid counts and specifications. The trial court, via a judgment entry issued May 6, 2105, sentenced appellant to a total sentence of four years on the four counts, plus three years consecutive for the firearm specifications, for a total prison sentence of seven years.

{¶14} Appellant filed a notice of appeal on June 4, 2015. He herein raises the following three Assignments of Error:

{¶15} "I. APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶16} "II. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO DISMISS UNDER CRIM.R. 29(A) AT THE CLOSE OF THE STATE'S CASE.

{¶17} "III. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO DISMISS UNDER CRIM.R. 29(A) AT THE CLOSE OF ALL EVIDENCE."

{¶18} We will address the assigned errors out of sequence.

II., III.

{¶19} In his Second and Third Assignments of Error, appellant contends the trial court erred in denying his motion for acquittal at the close of the State's case and at the close of all evidence. We disagree.

{¶20} An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard used to review a sufficiency of the evidence claim. *See State v. Carter* (1995), 72 Ohio St.3d 545, 553, 651 N.E.2d 965, 1995–Ohio–104. Thus, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶21} Appellant herein does not specifically challenge the sufficiency of the evidence going to the basic elements of the aggravated robbery, aggravated burglary, and grand theft charges. Instead, his initial focus is on the issue of his involvement as an accomplice in the events of January 5, 2015.

{¶22} R.C. 2923.03(A)(2) reads as follows: "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense."[2]

{¶23} We have recognized that in order to support a conviction for complicity by aiding or abetting under R.C. 2923.03(A)(2), "the evidence must show that the defendant

---

[2] The joint indictment of appellant, Briley, and Wilson does not reference the complicity statute *per se.* However, pursuant to R.C. 2923.03(F), an indictment may impliedly set forth complicity via the principal charged offenses. *See State v. Tuggle,* 6th Dist. Lucas No. L-09-1317, 2010-Ohio-4162, ¶ 10.

supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Shrider*, 5th Dist. Licking No. 07 CA 111, 2008–Ohio–3648, ¶ 41, citing *State v. Johnson* (2001), 93 Ohio St.3d 240, 754 N.E.2d 796, syllabus. Such intent may be inferred from the circumstances surrounding the crime. *Id.* Mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not aiding or abetting. *State v. Mullins* (1986), 34 Ohio App.3d 192, 200, 517 N.E.2d 945, citing *Columbus v. Russell* (1973), 39 Ohio App.2d 139, 140, 316 N.E.2d 897. In addition, Ohio law generally recognizes that circumstantial evidence is sufficient to prove the essential elements in a criminal case. *State v. Willey,* 5th Dist. Guernsey No. 98 CA 6, 1999 WL 3962, citing *State v. Hopfer* (1996), 112 Ohio App.3d 521, 558, 679 N.E.2d 321.

**{¶24}** In his brief, appellant asserts that "the State pursued the charges against [him] based upon a theory that he conspired with Ms. Briley and Mr. Wilson to commit the robbery of Mr. Tyler." Appellant's Brief at 7-8. However, complicity based on aiding or abetting as set forth in R.C. 2923.03(A)(2) does not necessarily require proof of a conspiracy. In other words, complicity (under R.C. 2923.03) does not require prior knowledge and planning as does conspiracy (R.C. 2923.01), but only that the accused participated in the act itself.[3] *See State v. Brumley*, 11th Dist. Portage No. 89-P-2092, 1996 WL 210767, (Mar. 29, 1996), citing *State v. Trent*, 10th Dist. Franklin No. 90AP-03, 1990 WL 106078, (July 26, 1990).

---

[3] Conspiracy can be a form of complicity under the statute, however, as set forth in R.C. 2923.03(A)(3).

**{¶25}** At trial, the testimony of Lidia Briley indicated that she heard appellant tell Wilson on or about January 2, 2015 that he had recently gotten out of jail and he was looking to "hit a lick," *i.e.*, rob or steal from somebody. *See* Tr. at 110-111. At the time of this encounter, appellant said he was in possession of a firearm. Tr. at 111. On the date of the robbery, Briley was not surprised to see appellant in the stairwell because Wilson had told her of appellant's involvement in an earlier cell phone call. Tr. at 118. Briley specifically testified that appellant drove the "getaway van" and was even congratulated by Wilson for coming around to pick them up after Briley and Wilson escaped out of the apartment window. Tr. at 116-117. In the van, appellant was excited about getting the victim's money, and he verbally contemplated going back to "hit [the] ole boy again." *See* Tr. at 119-120. Ohio courts have recognized that "[c]omplicity or aiding and abetting may be established by overt acts of assistance such as driving a getaway car or serving as a lookout." *State v. Landingham,* 8th Dist. Cuyahoga No. 84715, 2005–Ohio–621, ¶ 14, citing *State v. Cartellone,* 3 Ohio App.3d 145, 150, 444 N.E.2d 68 (8th Dist.1981).

**{¶26}** Appellant's challenge to the sufficiency of the evidence also goes to the issue of "operability" regarding the firearm specifications attendant to three of the charges. We have recognized that a firearm specification applies to an accomplice who did not personally brandish the gun as well as the principal. *See State v. Brown*, 5th Dist. Licking No. 2005 CA 0006, 2005-Ohio-3824. R.C. 2923.11(B)(1) states as follows: "'Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." Also, pursuant to R.C. 2923.11(B)(2), "[w]hen determining whether a firearm is capable

of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."

**{¶27}** The firearm in question was a .45 caliber pistol that was owned by Tyler and grabbed by Lidia Briley during the initial struggle in the apartment. Tyler testified at trial to the unsettling experience of having Briley threaten to "shoot me in the face with my own gun." Tr. at 46. Tyler noted he had owned the pistol for years, that it was operable, and that by his estimation he had previously fired 100 rounds from it. Tr. at 44, 69. Tyler, who owns and operates largely cash businesses, obtained his firearm for self-protection. Tr. at 34, 35, 69. He testified that during the incident in question, the weapon was fully loaded. Tr. at 45. He further noted that he would not have carried it if it were not operable. Tr. at 70.

**{¶28}** Accordingly, in the instant case, upon review of the record and transcript in a light most favorable to the prosecution, we find that a reasonable finder of fact could have found beyond a reasonable doubt that appellant was complicit in aggravated robbery and aggravated burglary, with the attendant firearm specifications, and grand theft. Therefore, his motions for acquittal were properly denied.

**{¶29}** Appellant's Second and Third Assignments of Error are overruled.

I.

**{¶30}** In his First Assignment of Error, appellant contends his convictions were against the manifest weight of the evidence. We disagree.

**{¶31}** Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See also, State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717. Furthermore, the trier of fact, as opposed to this Court, is in a far better position to weigh the credibility of witnesses. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.

**{¶32}** Appellant emphasizes Briley testified that she had first met appellant in Mansfield, Ohio, only about seven to ten days prior to the January 5, 2015 incident, although she had previously seen him around. Tr. at 109-111. Appellant maintains he was not involved in the planning of the theft (*see* Briley testimony, Tr. at 129), and although there were numerous text messages between Briley and Wilson about robbing Tyler, there was no evidence of similar communications between Briley and appellant; she simply "assumed" Wilson told appellant about such plans. *See* Tr. at 132-135; 142-143.

**{¶33}** In addition, appellant took the stand in his defense, testifying that he had some money from selling some gold jewelry and merely went to Wilson's home to get assistance in finding a dealer for "some weed." Tr. at 296-297. He claimed that Wilson then asked him for a ride to pick up "his sister" because she was being attacked by

someone. Tr. at 297-298. We note appellant told police investigators he was at the scene, but he denied ever getting out of the van. However, video surveillance of the stairwell area showed appellant and Wilson outside of the apartment door on the steps, thus likely undercutting appellant's credibility at trial.

**{¶34}** Upon review of the record in this case as summarized above, we find the trier of fact did not clearly lose his way and create a manifest miscarriage of justice requiring that appellant's convictions be reversed and a new trial ordered.

**{¶35}** Appellant's First Assignment of Error is therefore overruled.

**{¶36}** For the foregoing reasons, the judgment of the Court of Common Pleas, Holmes County, Ohio, is hereby affirmed.

By: Wise, J.

Farmer, P. J., and

Gwin, J., concur.

JWW/d 0202