[Cite as *State v. Leonard*, 2019-Ohio-3415.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 18CA011298 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| THOMAS J. LEONARD | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 17CR095761 |

DECISION AND JOURNAL ENTRY

Dated: August 26, 2019

HENSAL, Judge.

{¶1} Thomas Leonard appeals his convictions for complicity to commit robbery from the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2} According to Mr. Leonard's trial testimony, he and his roommate, Krystalyn, got into an argument one morning because they had no money for food or cigarettes. They both got into Mr. Leonard's car, with Krystalyn driving, and headed to the bank. When they arrived, Mr. Leonard approached a bank employee and inquired about obtaining a $500 loan. The employee informed Mr. Leonard that the bank did not give loans for that small of an amount. Mr. Leonard returned to his car, and Krystalyn drove to another bank and told Mr. Leonard that she was going to ask someone for gas money. Krystalyn then exited the car and left the engine running while Mr. Leonard remained inside, smoking a cigarette and listening to music. Then, suddenly, Krystalyn came running back to the car, got back into the driver's seat, told Mr. Leonard that she

tried to rob someone and that it went badly, and sped off. They eventually stopped at a gas station, and Mr. Leonard took over the driver's seat because Krystalyn was driving "like a maniac[.]" They then drove back to Mr. Leonard's house.

{¶3} After being inside his home for about ten minutes, Mr. Leonard received a call from the police, who asked him to come outside. As soon as he did, the police arrested him. Notably, Mr. Leonard testified that he did not see or hear the robbery.

{¶4} According to the victim, Krystalyn approached her almost immediately after she (the victim) withdrew $600 from the ATM. Krystalyn asked for gas money, and the victim indicated she would give her $5, but that she needed to make change at the Rite Aid down the street. This apparently upset Krystalyn, who then reached for the entire stack of bills. A physical altercation ensued, and the victim began yelling for help. Krystalyn eventually ran off without any money.

{¶5} Sometime during the altercation, the victim saw Mr. Leonard get out of the driver's side of his car and walk in front of it with his arms in the air as if to ask "[w]hat's going on?" The victim explained that Mr. Leonard's car was not parked in a parking spot, but rather in a way that would allow him to pull "[s]traight out." The victim watched Krystalyn get into the passenger side of Mr. Leonard's car before they sped off. The victim later identified Mr. Leonard and Krystalyn from a photo line-up.

{¶6} According to a witness who was across the street at Auto Zone, he heard the victim calling for help and saw Krystalyn running toward a car that was not parked in a parking spot. The witness did not see Krystalyn enter Mr. Leonard's car because his view was obstructed by another car, but he heard the car speed off with "spinning" and "peeling" tires. The witness

then followed the car, wrote down the license plate number, and returned to the bank to give it to the police, whom he assumed would have arrived by then.

{¶7} An officer ran the license plate number and recognized the owner: Mr. Leonard. The officer then drove to Mr. Leonard's house and waited in his cruiser for approximately 10 minutes before Mr. Leonard arrived. The officer observed Mr. Leonard emerge from the driver's side of the car, and head into his home with Krystalyn. Soon thereafter, the police arrested Mr. Leonard.

{¶8} A grand jury indicted Mr. Leonard on one count of robbery in violation of Revised Code Section 2911.02(A)(2), and one count of robbery in violation of Section 2911.02(A)(3). Mr. Leonard pleaded not guilty and the matter proceeded to a jury trial. At trial, the State proceeded under the theory of complicity, and the jury returned a verdict of guilty on both counts. Mr. Leonard now appeals, raising three assignments of error for our review. We will analyze the first two assignments together.

II.

ASSIGNMENT OF ERROR I

THE VERDICT IN THIS CASE IS AGAINST THE SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

ASSIGNMENT OF ERROR II

THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND OF THE OHIO CONSTITUTION.

{¶9} In his first assignment of error, Mr. Leonard challenges the sufficiency of the evidence presented at trial. In his second assignment of error, Mr. Leonard asserts that his convictions are against the manifest weight of the evidence. This Court disagrees.

{¶10} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶11} On the other hand, when considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Notably, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶12} As previously noted, a grand jury indicted Mr. Leonard on one count of robbery under Section 2911.02(A)(2), and one count of robbery under Section 2911.02(A)(3). Section 2911.02(A)(2) provides that "[n]o person, in attempting or committing a theft offense * * * shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another." Section

2911.02(A)(3) provides that "[n]o person, in attempting or committing a theft offense * * * shall * * * [u]se or threaten the immediate use of force against another." A theft offense occurs when someone knowingly obtains or exerts control over the property of another without the owner's consent, with the purpose to deprive the owner of that property. R.C. 2913.02(A)(1).

{¶13} Section 2923.03 governs complicity, providing that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" R.C. 2923.03(A)(2). As the Ohio Supreme Court has stated:

> [t]o support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal.

*State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "Such intent may be inferred from the circumstances surrounding the crime[,]" including "the presence, companionship, and conduct of the defendant before and after the offense is committed." *Id.*; *In re T.K.*, 109 Ohio St.3d 512, 2006-Ohio-3056, ¶ 13.

{¶14} Here, there is no dispute that Krystalyn tried to grab the victim's money, that she did so using physical force, and that she caused physical harm to the victim. Accordingly, Mr. Leonard's argument on appeal focuses on the evidence as it relates to his complicity.

{¶15} In support of his challenge to the sufficiency and manifest weight of the evidence, Mr. Leonard asserts that the evidence indicated that he and Krystalyn did not plan to commit a robbery that day, that he did not see the robbery take place, and that he never left his car during the robbery. He argues that, at best, he only knew that Krystalyn was going to ask someone for gas money, which is not a crime. He, therefore, concludes that he was not complicit to the robbery.

{¶16} Mr. Leonard relies on three cases in support of his argument, which we will address in turn. First, Mr. Leonard cites *State v. Ratkovich*, suggesting that it provides a near-identical set of facts. 7th Dist. Jefferson No. 02-JE-16, 2003-Ohio-7286. In *Ratkovich*, the defendant's son went into a Circuit City and stole two gaming systems while she waited in the parking lot with her car running. *Id.* at ¶ 2. Her son then ran back to the car, jumped in, threw the stolen items in the back, and told her to take off because he had just stolen items. *Id.* The defendant complied. *Id.*

{¶17} A jury found the defendant guilty of complicity to commit theft, and she appealed. *Id.* at ¶ 4-5. On appeal, the defendant argued that the trial court erred by instructing the jury on complicity because she did not possess the required mental state. *Id.* at ¶ 8. In a two-to-one decision, the Seventh District agreed, pointing to testimony from the defendant's son that he did not tell his mother he was going to steal anything, which was corroborated by his statement to the police. *Id.* at ¶ 24. Additionally, the court pointed to the fact that the defendant's son had to cross two lanes of traffic to get to her car, surmising that if she "planned to be [her son's] getaway driver, presumably she would have parked at the entrance." *Id.* at ¶ 25. The court ultimately concluded that "[i]t is a significant jump to conclude that because a mother drops her son off and waits for him to go into a store with the engine running in a close parking space that she knew he was going in to commit a theft[,]" and sustained her assignment of error. *Id.* at ¶ 23, 27.

{¶18} Second, Mr. Leonard cites *State v. Woods*, 48 Ohio App.3d 1 (1st Dist.1988). In *Woods*, the First District determined that the trial court erred by instructing the jury on complicity to commit aggravated murder because the evidence indicated that the defendant thought the principal offender had abandoned her plan to commit aggravated murder. *Id.* at 7. In

doing so, the court concluded that the evidence indicated that the defendant was merely present at the scene of the crime, and had not acted as an accomplice. *Id.*

{¶19} Third, Mr. Leonard cites *State v. Starr*, 24 Ohio App.2d 56 (1st Dist.1970). There, Donald Grimes grabbed a purse from a woman outside of a grocery store. *Id.* at 57. He then walked down the street, and the defendant drove by and picked Mr. Grimes up on a different street. *Id.* The First District concluded that "[t]here [was] no evidence in the record either that [the defendant] was at the scene of the alleged robbery or that he communicated with Grimes in any way before the robbery of which Grimes stands convicted." *Id.* at 57-58. It, therefore, reversed the defendant's conviction for complicity to commit robbery. *Id.* at 58.

{¶20} Nothing in the three cases cited by Mr. Leonard compels this Court to reach a similar conclusion. Here, the State's evidence indicates that Mr. Leonard – not Krystalyn – was driving his car, that he positioned it in the bank parking lot to allow him to drive "[s]traight out[,]" that he left it running, and that he sped off with "spinning" and "peeling" tires after Krystalyn ran back to the car and indicated that the robbery had gone badly. While the State's evidence also indicates that Mr. Leonard got out of his car at one point and put his arms in the air as if to ask "[w]hat's going on?", Mr. Leonard testified a trial – and maintains on appeal – that he never exited his car during the robbery. Viewing the evidence in a light most favorable to the State, we cannot say that the State presented insufficient evidence to support Mr. Leonard's convictions for complicity to commit robbery. *See State v. Farr*, 9th Dist. Summit No. 15213, 1992 WL 41284, *3 ("Based upon appellant's conduct, before, during and after the robbery, the jury could reasonably conclude that appellant participated in the aggravated robbery by driving the getaway car."); *State v. Larry*, 5th Dist. Holmes No. 15CA011, 2016-Ohio-829, ¶ 25, quoting *State v. Landingham*, 8th Dist. Cuyahoga No. 84715, 2005-Ohio-621, ¶ 14 ("Ohio courts have

recognized that '[c]omplicity or aiding and abetting may be established by overt acts of assistance such as driving a getaway car * * * .'").

{¶21} Further, while Mr. Leonard has presented no discernable argument as it relates to the manifest-weight of the evidence separate and apart from his sufficiency argument, we conclude that this is not the exceptional case where the evidence weighs heavily against Mr. Leonard's convictions. *Otten*, 33 Ohio App.3d at 340. Mr. Leonard's version of the events differed from the version offered by the State's witnesses. For example, Mr. Leonard testified that he was not driving, that he never exited his vehicle, and that he did not see or hear the robbery. Yet the victim testified that she saw Mr. Leonard emerge from the driver's side of his car and walk in front of it, which is how she was able to identify him in the photo line-up. "It [was] the jury's province to take note of inconsistencies in the testimony of the witnesses and resolve or discount them accordingly." *State v. Davis*, 9th Dist. Summit No. 26994, 2014-Ohio-687, ¶ 14. The fact that the jury believed the State's version of the events is not a basis for reversal. *State v. Horner*, 9th Dist. Wayne No. 16AP0053, 2017-Ohio-7355, ¶ 11.

{¶22} Based upon the foregoing, Mr. Leonard's first and second assignments of error are overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON A COMPLICITY CHARGE, OVER DEFENDANT'S OBJECTION.

{¶23} In his third assignment of error, Mr. Leonard argues that the trial court erred by instructing the jury on complicity. His argument in this regard is wholly contingent upon this Court's resolution of the previous assignments of error in his favor. Specifically, he argues that "[t]he law previously cited in [his] brief supports a finding that [he] was not complicit to the

robbery[,]" and, therefore, the trial court erred by instructing the jury on complicity. Because this Court has already overruled his previous assignments of error, we overrule his third assignment of error.

## III.

**{¶24}** Mr. Leonard's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

GIOVANNA V. BREMKE, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and BRIAN P. MURPHY, Assistant Prosecuting Attorney, for Appellee.