**[Cite as *State v. Duke*, 2021-Ohio-1552.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                 Court of Appeals No. WD-20-001

       Appellee           Trial Court No. 2019CR0123

v.

Mecca Duke            **DECISION AND JUDGMENT**

       Appellant          Decided: April 30, 2021

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

W. Alex Smith, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Wood County Common Pleas Court which, following a bench trial, found appellant, Mecca Amelia Rasula Duke, guilty of complicity to burglary and petty theft. For the reasons set forth below, this court affirms the judgment of the trial court.

# I. Background

{¶ 2} On April 4, 2019, a Wood County Grand Jury indicted appellant for the offenses of burglary, a violation of R.C. 2911.12(A)(1) and 2911.12(D), a second-degree felony (Count 1), and of petty theft, a violation of R.C. 2913.02(A)(1) and 2913.02(B)(2), a first-degree misdemeanor (Count 2). Appellee alleged appellant was complicit with codefendant Nikia Johnson in the afternoon of Saturday, March 9, 2019, and drove Ms. Johnson to the Kohl's retail store in Perrysburg, Wood County, Ohio, with the intent to trespass into the occupied store and remove merchandise without payment and without the consent of Kohl's.

{¶ 3} Appellant waived her right to a jury trial, and on November 12, 2019, following a bench trial, the trial court found appellant guilty of complicity to the burglary and petty theft offenses. The transcript of the bench trial is in the record.

{¶ 4} Officer Tyler Gearig of the Perrysburg Township Police Department testified at trial that he responded to a dispatch call around 3:50 p.m. reporting a theft from the Perrysburg Kohl's. He was given descriptions from Kohl's of: the woman who entered the store and stole merchandise using a Kohl's mesh shopping bag, the red Chevy Cobalt getaway car with the front license plate in the front windshield and missing a hubcap, and the red hijab-wearing woman who drove the getaway car. A be-on-the-look-out ("BOLO") bulletin was issued, and the red car was spotted by Rossford police on the nearby highway and was stopped. Officer Gearig arrived at the location of the stopped car and was able to match the description of Ms. Johnson as the woman who entered

2.

Kohl's and stole merchandise, the description of appellant as the woman who drove the getaway car, and the description of the getaway car, which was registered to appellant. Ms. Johnson admitted to Officer Gearig of stealing merchandise from Kohl's and said the stolen retail items were in the backseat of the getaway car. Officer Gearig observed in plain view through the car window the stolen items in the Kohl's mesh shopping bag, and then confirmed the items had Kohl's price tags on them. Both women were then arrested.

{¶ 5} Sergeant Jason Gladney of the Perrysburg Township Police Department testified at trial that the Kohl's loss prevention associate, Jennifer Hassal, is personally known to him as a source of information regarding theft incidents at the Perrysburg store. After Officer Gearig proceeded to where Rossford police stopped the getaway car, Sergeant Gladney entered the Perrysburg Kohl's and watched the security videos. He described the videos as showing Ms. Johnson enter Kohl's at 3:48 p.m. on March 9, 2019, pick up a mesh shopping bag, and proceed to stuff into the bag women's clothing, athletic wear, and other items. "[S]he was basically set on something, she had a mission; she wasn't just really just looking at stuff. * * * [And she] just leaves without paying for the items." The time of her exit was 3:56 p.m. Sergeant Gladney also viewed the parking lot videos and confirmed appellant was waiting in the getaway car and quickly drove off as soon as the running Ms. Johnson entered the passenger side.

{¶ 6} Kelly Griffin, a Perrysburg Kohl's store manager, testified at trial that she finished her shift at 3:45 p.m. on March 9, 2019, and was in the Kohl's parking lot in her vehicle preparing to leave when she observed a red car arrive and have difficulty backing

3.

into a parking space near the store entrance and near Ms. Griffin's vehicle. She noticed two women in the car, "But being trained the way I am, what I noticed is that one person got out of the car and one person stayed in the car. So that would also have caught my attention." After a woman exited the passenger side of the car and entered the store, Ms. Griffin continued to observe the situation. "At that point I would be concerned because of proximity to the door, driver still in the car, because we've had a lot of run outs." At 3:56 p.m., "I saw the person that got out of the car come running back to the car with Jennifer, my loss prevention associate, trying to follow her to get her to stop. * * * [The person is carrying] a Kohl's shopping bag full of merchandise." The red car started running in the parking space. Ms. Griffin saw the person run to the passenger side of the red car, and the red car took off "pretty quickly." Ms. Griffin started following the red car and called Perrysburg Township police to provide information on the red car's movements. Ms. Griffin explained why she watched and observed this particular situation:

> So there are things that you watch out for as a store manager for what we call bag and grabs. And it's cars that are running close to the doors. And that's why we also don't like for cars to park right at the fire exit because those cars sometimes are people in the store grabbing lots of merchandise and running out with it unpaid to the car. So someone backing into a parking spot that close with a driver still in the car makes you take a second look.

{¶ 7} Jennifer Hassal, the loss prevention supervisor for the Perrysburg Kohl's, testified at trial she was in her office and observed through the close-captioned multi-camera system that at 3:48 p.m. on March 9, 2019, Ms. Johnson used the west entrance of the store, "and she quickly grabbed a mesh bag and proceeded directly to our misses active department and began filling it with merchandise." In her experience, the "mesh bags a lot of time stand out a little bit more than a regular shopping cart. Not a lot of people use them. And they are one of the tools that a lot of our ORC, organized crime rings, choose to use for run-out thefts." Another factor that caused Miss Hassal to pay attention to the woman was, "she kind of cut through departments. * * * [A]fter twenty years of watching people you kind of learn mannerisms of shoppers and the things that they do and don't do. To me it seemed that she was avoiding associates and things like that. * * * I'm noticing that she is not looking at sizes, she's not really looking at prices, just kind of filling a mesh bag full of merchandise." Another thing that caught her attention, "she appeared to be on the phone with somebody." By 3:55 p.m., Miss Hassal saw the woman move toward the exit doors with a very full mesh bag, "And she didn't take a long time to select any of it or really shop for it." Miss Hassal came to the shopping floor and saw Ms. Johnson "looking around to see if anybody is watching her. And then she passes all points of purchase, failing to offer any sort of payment for merchandise, and [held onto] the mesh bag that she carried out with her." Miss Hassal ran out the door after Ms. Johnson to attempt to stop her. "She was moving very quickly. And I identified myself as loss prevention. And she just kept running to the vehicle."

5.

Miss Hassal saw Ms. Johnson enter the passenger side of the red car, which the driver had running, and leave within seconds "taking [Ms. Johnson] and the merchandise with it." Miss Hassal was within six to eight feet of the red car and saw the right front wheel was missing the hubcap. Miss Hassal was in walkie-talkie communication with the store supervisor and provided the getaway car description and license plate information, and the store supervisor, in turn, was on the phone with the Perrysburg Township police dispatcher relaying real-time information. When Miss Hassal learned Ms. Johnson's name from the police, she entered it into Kohl's loss prevention management system and learned that Ms. Johnson had been recently apprehended at the Toledo Kohl's on February 2, 2019, and entered into a no trespass agreement with Kohl's. Then on March 25, 2019, Ms. Hassel received a BOLO from the Lima Kohl's store about an incident there the day before the incident in Perrysburg. On March 8, 2019, the same red getaway car was involved in theft at the Lima Kohl's store. After the Perrysburg Township police recovered the stolen Kohl's merchandise from the getaway car, the merchandise was valued at nearly $800.

{¶ 8} Appellee then rested its case. Appellant immediately moved for a judgment of acquittal pursuant to Crim.R. 29(A). Specifically, appellant focused on Count 1 and argued there was no testimony "with regard to the burglary being committed with either force, stealth, or deception," an essential element. Appellant argued Ms. Johnson's crossing the threshold into Kohl's did not constitute force, stealth or deception to enter the store itself because "the doors were open." Appellant further argued there was no

evidence appellant "was the lookout at all, just that she's in the vehicle, the vehicle is parked in the parking lot. There's no video that shows that she is, you know, staring outside. There's (sic) no phone records to show she is communicating with Miss Johnson. * * * [T]here's no evidence that she has any knowledge at all of what is happening inside the store." Appellant concluded, "my argument would be that those elements could be imputed with regard to potentially the misdemeanor [petty theft] charge but not the felony [burglary] charge unless, again, there is some basis for some knowledge of what is going to occur there."

{¶ 9} Appellee responded how each of the elements of complicity to burglary and petty theft were sufficiently proven beyond a reasonable doubt. Appellee argued that as the getaway driver, appellant aided and abetted Ms. Johnson's trespass, which requires a showing of either force, stealth, or deception. "The video shows the red hijab that [appellant] was wearing." Appellee argued that force was proven by Ms. Johnson activating the door sensor that triggers the sliding doors to open and stay open when a person passes. Appellee argued that stealth was proven by Ms. Johnson avoiding the main aisles of the store to weave through clothing racks to reach the departments she sought to quickly stuff merchandise into the Kohl's shopping bag. Appellee argued that deception was proven by Ms. Johnson pausing to look and survey if anyone was watching her before exiting, so "that if anybody looked at her, [they] thought she was going to pay for it. What does she do? She takes the ten or twelve steps breaking the plane again and walking out that door."

7.

**{¶ 10}** The trial court denied appellant's motion with the following explanation.

Upon reviewing Criminal Rule 29 motion for acquittal, the Court's inquiry should be whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt when viewing the evidence in the light most favorable to the prosecution. In this particular case the defense has argued that the elements of force, stealth, and deception were not proven by the State, and also arguing that they cannot be imputed to the defendant because the defendant had no knowledge that a theft offense was taking place.

The Court would reject those arguments as it believes that case law has established that elements established against the principal are imputed to the complicitor.

In regard to the issue of force, stealth, and deception, first, turning to force; force is defined as violence, compulsion, effort, or constraint exerted or used by any means upon, again, on or against a person or thing to gain entrance. * * * Under that standard, considering the requirements of Criminal Rule 29, I believe that any rational trier of fact could find that the force was established under the State's argument that the electronic triggering of a closed door to open was enough effort to prove force.

* * *

In regard to stealth, I think there's been enough information shown that Miss Johnson entered into and tried to conceal herself in certain ways as she went through the store and went through it in a quick manner so as to not be detected. Therefore, under the Criminal Rule 29 standard that also could be established.

In regard to deception, Kohl's holds itself out for the purpose of selling items to those willing to purchase them.

Under Criminal Rule 29 standard, I believe that there has been evidence shown that Miss Johnson, the principal in this case, entered with the purpose to steal items, and, therefore, had the purpose of stealing.

Therefore, based on those considerations the court would deny the Rule 29 motion.

{¶ 11} Following the trial court's ruling, appellant then testified on her own behalf. Appellant testified that Ms. Johnson is her second cousin and that they do not "do much together." Despite the surveillance videos of the Kohl's parking lot showing Ms. Johnson exiting the passenger side of the getaway car upon arrival, appellant insisted Ms. Johnson drove the car to the Perrysburg Kohl's for reasons unknown to appellant. Despite appellee pointing out the Kohl's parking lot video showing appellant drinking something while sitting on the driver's side and moving about, appellant testified that she was laying down on the passenger side and "I was in and out. I was waking up, going to sleep, waking up, going to sleep. * * * I never knew where I was." At some point

9.

appellant decided to move from the passenger side to the driver's side without exiting the car. When Ms. Johnson left the store running and reached the car, Ms. Johnson somehow knew to run straight to the passenger side. "Nikia gets in the car. I was like, okay, drive. And that's what I did. I just drove." Appellant testified she did not know Ms. Johnson threw stolen Kohl's merchandise into the car. "She didn't throw it in the front seat. I didn't know what it was. She carries big purses. I didn't know what it was. And I didn't see her when she threw it in the back seat."

{¶ 12} Appellant never entered the Kohl's store "[b]ecause I didn't know where I was. [Nikia] had stopped [at Kohl's]. I didn't know nothing about Kohl's. * * * As I said, I was in and out of – incapacitated; in and out, in and out, I was asleep, I was woke (sic). I was asleep, I was passing out." Appellant had no idea why she was later stopped on the highway. "Like I told the trooper, I didn't know where I was coming from. I was just waking up." Appellant testified she was incapacitated by a medical condition.

> I remember the police taking us to the station. After they took us to
> the station I remember them taking me to the hospital because I was feeling
> ill. So they had to get the clearance. Within that clearance they found out I
> had severe UTI. They found it in three different places. I was
> incapacitated. I was not in my right mind.

{¶ 13} After appellant concluded her testimony, the defense rested, and appellant renewed her Civ.R. 29 motion without argument. The trial court denied the motion

again. After closing arguments by the parties, the trial court found appellant guilty of complicity to burglary and petty theft.

{¶ 14} Sentencing occurred on December 27, 2019. The trial court sentenced appellant for Count 1 to 180 days in jail and five years of community control with certain conditions along with imposing and suspending eight years in prison. The trial court sentenced appellant for Count 2 to 180 days in jail and five years of community control with certain conditions. The 180 days in jail for each count would run concurrently to one another. The sentencing judgment entry was journalized on December 30, 2019.

{¶ 15} Appellant then filed her appeal setting forth two assignments of error: (1) The trial court erred when it convicted the appellant against the manifest weight of the evidence; and (2) The trial court erred when it convicted the appellant of burglary contrary to law and failing to grant an acquittal under Criminal Rule 29.

{¶ 16} We will address appellant's assignments of error out of sequence.

## II. Sufficiency of Evidence

{¶ 17} In support of her second assignment of error, appellant argues the trial court erred by denying her Crim.R. 29(A) motions for acquittal on Count 1. Appellant argues there was insufficient evidence at trial with which to convict appellant of complicity to burglary. Appellant argued, "[s]imply driving a car is not sufficient to prove complicity. * * * No evidence was presented to show that appellant made any attempt to further the criminal conduct. * * * Giving someone a ride without any knowledge as to what the other purpose (sic) would do as a result of that ride is not a crime."

11.

{¶ 18} Appellant made two motions for acquittal pursuant to Crim.R. 29(A): after appellee rested its case and after appellant rested its case. Crim.R. 29(A) states, in part, "The court on motion of a defendant * * *, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * *, if the evidence is insufficient to sustain a conviction of such offense or offenses." Appellant's motions for acquittal under Crim.R. 29(A) are governed by the same standard as a challenge to the sufficiency of evidence supporting a conviction at trial. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 19} The Ohio Supreme Court guides appellate courts reviewing a challenge to the sufficiency of evidence as follows:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. McFarland*, Slip Opinion No. 2020-Ohio-3343, ¶ 24, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the

12.

conclusion reached by the trier of facts." *Jenks* at 273. Appellate courts do not evaluate the credibility of the evidence when determining its sufficiency because our role is to decide whether the evidence, if believed, can sustain the verdict as a matter of law. *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 132. Appellate courts must defer to the trier of fact on questions of credibility and the weight assigned to the evidence. *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132. All admissible evidence may be considered by the reviewing court on a claim of insufficient evidence. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 80.

{¶ 20} "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "'But the fact that a question of law involves a consideration of the facts or the evidence does not turn it into a question of fact. Nor does that consideration involve the court in weighing the evidence or passing upon its credibility.'" *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 25, quoting *O'Day v. Webb*, 29 Ohio St.2d 215, 219, 280 N.E.2d 896 (1972). We review a question of law de novo. *State v. Baker*, 6th Dist. Wood No. WD-09-088, 2010-Ohio-4719, ¶ 21, citing *Thompkins* at 386.

{¶ 21} Upon de novo review we find appellant's challenges to the sufficiency of the evidence are without merit.

13.

## A. Complicity

{¶ 22} The crime of complicity is governed by statute. R.C. 2923.03(A)(2) states, "No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * (2) Aid or abet another in committing the offense." "The statute does not define 'aid or abet,' but this court has stated that to aid or abet is '[t]o assist or facilitate the commission of a crime, or to promote its accomplishment.'" (Citations omitted.) *McFarland* at ¶ 27.

{¶ 23} A person may be charged with complicity under the complicity statute or under the statutes of the principal offenses, and appellee is not required to explicitly allege complicity. R.C. 2923.03(F); *McFarland* at ¶ 28; *State v. Williams*, 6th Dist. Lucas No. L-07-1093, 2008-Ohio-3505, ¶ 18. "Aiding and abetting has been characterized as a substantive and independent offense so that aiders and abettors may be prosecuted and convicted as principals without the trial or conviction of the principal offender." *State v. Henderson*, 6th Dist. Lucas No. L-80-330, 1981 WL 5775, *2 (Sept. 4, 1981). We find that appellee properly charged appellant under the statutes of the principal offenses of burglary and petty theft rather than the complicity statute.

{¶ 24} A conviction for complicity by aiding and abetting must be supported by evidence that the defendant supported, assisted, encouraged, cooperated with, advised or incited the principal in the commission of the principal offense. *McFarland* at ¶ 29. The complicit party must also share the criminal intent of the principal, which may be inferred from the circumstances surrounding the crime, including the complicit party's presence,

companionship, and conduct before and after the principal offense is committed. *Id.* at ¶ 39.

**{¶ 25}** This court has previously held that the overt act of assistance of driving a getaway car is enough to show a defendant aided and abetted in the principal offense. *State v. Bowling*, 6th Dist. Huron No. H-93-40, 1994 WL 318500, *1 (June 24, 1994). In so holding we follow the majority of courts of appeals in Ohio that hold the same. *State v. Brock*, 1st Dist. Hamilton No. C-75079, 1976 WL 189473 (Feb. 2, 1976), *3; *State v. Wright*, 3d Dist. Hardin No. 6-15-14, 2016-Ohio-5465, ¶ 20 and 23; *State v. Larry*, 5th Dist. Holmes No. 15CA011, 2016-Ohio-829, ¶ 25; *State v. Cartellone*, 3 Ohio App.3d 145, 150, 444 N.E.2d 68, 74 (8th Dist.1981); *State v. Leonard*, 9th Dist. Lorain No. 18CA011298, 2019-Ohio-3415, ¶ 20; *State v. Trocodaro*, 36 Ohio App.2d 1, 6, 301 N.E.2d 898, 902 (10th Dist.1973); *State v. Tate*, 11th Dist. Lake No. 2010-L-145, 2011-Ohio-6848, ¶ 68; *In re B.T.B.*, 12th Dist. Butler No. CA2014-10-199, 2015-Ohio-2729, ¶ 40.

**{¶ 26}** Appellee could meet its burden at trial using circumstantial evidence. *Jenks*, 61 Ohio St.3d at 283, 574 N.E.2d 492.

> Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such

evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.

*Id.* at paragraph one of the syllabus. "While inferences cannot be built on inferences, several conclusions can be drawn from the same set of facts; and a series of facts and circumstances can be used as a basis for ultimate findings." *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293 (1990).

{¶ 27} The major consideration in determining the sufficiency of the evidence of appellant's alleged complicity is not whether the individual crimes were committed but whether the evidence of appellant's involvement in them was sufficient to find her guilty of the crimes. As explained below, the evidence at trial after appellee rested its case and, again, after appellant rested her case, was sufficient to prove the essential elements that appellant was complicit in the principal offenses, of which appellant focuses on burglary.

{¶ 28} We find the record shows appellant "was much more than a passive spectator who was 'merely present' at the scene of a crime." *State v. Widner*, 69 Ohio St.2d 267, 269, 431 N.E.2d 1025 (1982); *State v. Johnson*, 93 Ohio St.3d 240, 245, 754 N.E.2d 796 (2001). We find the record shows appellant supported, assisted, encouraged, cooperated with, advised or incited Ms. Johnson in the commission of the principal offense of burglary by driving appellant's car to the Perrysburg Kohl's on March 9, 2019, from which Ms. Johnson emerged from the passenger side, then by waiting in the getaway car near the Kohl's exit doors, and then by quickly driving Ms. Johnson from

16.

Kohl's after Ms. Johnson ran to the passenger side of the getaway car with the stolen merchandise and with the Kohl's loss prevention supervisor running to catch up and verbally identifying herself. By such evidence in the record we may infer that appellant shared the criminal intent of Ms. Johnson.

{¶ 29} As further shown below, we find that after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of complicity to burglary proven beyond a reasonable doubt.

### B. Burglary

{¶ 30} In order for appellant's involvement to be sufficient to find her guilty of complicity to burglary pursuant to R.C. 2911.12(A)(1), appellee must prove beyond a reasonable doubt that, "No person, by force, stealth, or deception, shall * * * Trespass in an occupied structure * * *, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense."

{¶ 31} Appellee's reasonable doubt burden is defined by statute.

"Reasonable doubt" is present when the [triers of fact], after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. "Proof beyond a reasonable doubt" is proof of such character that an ordinary person would

be willing to rely and act upon it in the most important of the person's own affairs.

R.C. 2901.05(E).

### 1. Force

**{¶ 32}** The burglary statute requires only one of three methods—"force, stealth, or deception"—to be proven beyond a reasonable doubt. We will focus on "force."

**{¶ 33}** "'Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "Force" is satisfied by any effort physically exerted to gain entrance onto the land or premises of another. *State v. Hudson*, 2018-Ohio-423, 106 N.E.3d 205, ¶ 16 (2d Dist.); *see Goins v. State*, 90 Ohio St. 176, 181, 107 N.E. 335 (1914).

**{¶ 34}** We previously found the record showed appellant's complicity was proven beyond a reasonable doubt. We further find the record shows force was proven beyond a reasonable doubt by Ms. Johnson activating the door sensors when she walked into the Perrysburg Kohl's on March 9, 2019, and triggered the two sliding doors to open and stay open as she passed through.

**{¶ 35}** We find there was sufficient evidence in the record, if believed by the trier of fact, to sustain appellee's burden for appellant's complicity to the force element of burglary.

18.

## 2. Trespass in an Occupied Structure

{¶ 36} The burglary statute requires evidence beyond a reasonable doubt of a trespass in an occupied structure. "Trespass" is defined by R.C. 2911.21(A)(1). "A trespass under R.C. 2911.21(A) occurs when a person, without privilege to do so, "[k]nowingly enter[s] or remain[s] on the premises of another." *McFarland*, Slip Opinion No. 2020-Ohio-3343, at ¶ 50.

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶ 37} Relevant circumstantial evidence may be used to infer criminal intent. *Baker*, 6th Dist. Wood No. WD-09-088, 2010-Ohio-4719, at ¶ 24. Circumstantial evidence may also be used to infer a defendant acted knowingly, even if the result was not intended. *Id.* at ¶ 23. "Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *Id.*

{¶ 38} R.C. 2909.01(C)(4) defines an "occupied structure" as "any * * * building * * * to which any of the following applies: * * * At the time, any person is present or likely to be present in it."

{¶ 39} We find the record proves beyond a reasonable doubt Ms. Johnson knowingly trespassed in an occupied structure to which she was not welcome pursuant to the no-trespass agreement she signed with Kohl's on February 2, 2019, just the prior month to the incident in this case; and by the theft occurring on Saturday, March 9, 2019, at approximately 3:45 p.m. when the Perrysburg's Kohl's was open for business and the security videos showed the Kohl's store was occupied with people while Ms. Johnson was stealing Kohl's merchandise.

{¶ 40} In addition, we find the record proves beyond a reasonable doubt appellant knowingly aided and abetted Ms. Johnson's crimes by: (1) the BOLO theft event at the Lima Kohl's on March 8, 2019, just the day prior to the incident in this case, that identified appellant's car as the same getaway car; (2) driving appellant's own car to the Perrysburg Kohl's during the afternoon on March 9, 2019, and Ms. Johnson emerging from the passenger side; (3) waiting in the getaway car near the Kohl's exit doors, and (4) despite appellant's allegedly incapacitating illness causing her to be asleep and "out of it" for every moment prior to the getaway, appellant's instantaneous readiness and alertness to speed away after Ms. Johnson ran to the getaway car with the stolen merchandise while being chased by Miss Hassal.

20.

{¶ 41} Appellant argues that because Johnson's conduct satisfying the trespass element of the principal burglary offense was based on Johnson's prior conduct, that the trespass cannot be imputed to her to support her complicity to burglary conviction. Appellant relies on *State v. Jackson*, 90 Ohio App.3d 702, 705, 630 N.E.2d 414 (6th Dist.1993), in which we held "[t]he complicity statute, by its very terms, precludes appellant from attributing to appellee the criminal record which the principal offender alone has compiled as a result of offenses committed at other times and places." In *Jackson*, the defendant was charged with complicity to commit grand theft for aiding and abetting the principal offender in the theft of $42 worth of clothing. Under R.C. 2913.02, a theft in that amount ordinarily constitutes a first-degree misdemeanor. However, because the principal offender had two prior theft convictions, the charge was elevated to a third-degree felony for grand theft pursuant to R.C. 2913.02(B). Jackson argued that she could not be held complicit for the elevated charge because she did not aid and abet the principal offender in the prior conduct which resulted in the enhanced charge. We agreed and affirmed the dismissal of Jackson's complicity to grand theft charge.

{¶ 42} Appellant's reliance on *Jackson* in this appeal is misplaced. In *Jackson*, the principal theft offense was elevated to a third-degree felony based on the principal offender's prior convictions by operation of law. Here, the principal offense *was* the burglary Johnson committed. Johnson's status as a trespasser merely satisfied an element of the principal offense—it did not enhance the offense to a higher degree than would have otherwise been charged for the same conduct. Since Johnson's conduct in

committing the principal offense is imputed to appellant, her status as a trespasser is likewise imputed to appellant. *See State v. Rice,* 103 Ohio App.3d 388, 659 N.E.2d 826 (10th Dist.1995) (holding that the principal offender's status as a public official was imputed to his accomplice for felony convictions based on that status despite the fact his accomplice was not a public official). Johnson's status lacking privilege to enter or remain in a Kohl's store did not enhance the principal offense and is properly imputed to appellant. Appellant's argument regarding the application of our holding in *Jackson* is without merit.

{¶ 43} We reviewed the record in this case de novo. We find that after reviewing all the admissible evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt the essential elements appellant was guilty of the crime of complicity to burglary. We find that reasonable minds could reach the same conclusion as reached by the trier of fact. We further find the evidence in the record is legally sufficient to support the verdict as a matter of law.

{¶ 44} Appellant's second assignment of error is not well-taken.

### III. Manifest Weight of the Evidence

{¶ 45} In support of her first assignment of error, appellant argued her conviction was against the manifest weight of the evidence because "[s]imply driving a car is not sufficient to prove complicity," citing *Wright*, 3d Dist. Hardin No. 6-15-14, 2016-Ohio-5465. However, the Third District Court of Appeals held the opposite from what

appellant asserts: "driving the getaway car is an overt act of assistance amounting to aiding and abetting." *Id.* at ¶ 23.

{¶ 46} A challenge to a conviction based on the manifest weight of the evidence questions whether the trial court could find a greater amount of credible evidence was admitted at trial to sustain that decision than not. *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 75, citing *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541 (the weight of credible evidence is not a question of mathematics; rather its effect in inducing belief). "A verdict can be against the manifest weight of the evidence even though legally sufficient evidence supports it." *Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, at ¶ 140.

{¶ 47} We must "extend special deference to the [trier of fact's] credibility determinations given that it is the [trier of fact] who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor." *State v. Beavogui*, 6th Dist. Wood No. WD-17-009, 2018-Ohio-2432, ¶ 55. The testimony of the sole witness in this matter, if believed by the trial court, is sufficient to support a conviction because witness' credibility was for the trial court to determine. *State v. Bartulica*, 6th Dist. Erie No. E-17-065, 2018-Ohio-3978, ¶ 43. Where the state's evidence is unrebutted, there are few, if any, conflicts for the trier of fact to resolve. *Myers* at ¶ 141.

23.

{¶ 48} In this case the trial court judge was the trier of fact. *State v. Henderson*, 6th Dist. Wood No. WD-16-012, 2017-Ohio-2900, ¶ 17. It is well established that the trier of fact, whether in a civil or criminal matter, has the primary duty to decide what weight should be given to the testimony of any witness. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. "A reviewing court may not reverse a judgment of conviction in a criminal case in a trial court, where the record shows that a verdict of guilty was returned by [the trier of fact] on sufficient evidence and where no prejudicial error occurred in the actual trial of the case * * *." *Id.* at paragraph two of the syllabus.

{¶ 49} This court has repeatedly stated that in determining whether a verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way to create such a manifest miscarriage of justice as to require a new trial. *State v. Reynolds*, 6th Dist. Lucas No. L-16-1021, 2017-Ohio-1478, ¶ 47. A conviction will be overturned only in exceptional cases. *Id.* We do not find appellant provided evidentiary support for this assignment of error to indicate this was an exceptional case.

{¶ 50} We reviewed the entire record and find a greater amount of credible direct and circumstantial evidence was admitted at trial for the trial court to reach its decision of appellant's guilt for complicity to burglary. Despite appellant's assertions to the

24.

contrary, we do not find the trial court clearly lost its way to create such a manifest miscarriage of justice as to require a new trial.

{¶ 51} Appellant's first assignment of error is not well-taken.

### IV. Conclusion

{¶ 52} On consideration whereof, we find that substantial justice has been done in this matter. The judgment of the Wood County Common Pleas Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.